[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO DISMISS (#103.50)
The plaintiff, Vitale Fireworks Display Company, Inc. (hereinafter "Vitale"), a Pennsylvania corporation, and Kenneth Lupoli (hereinafter "Lupoli"), a Connecticut resident, commenced this action on May 28, 1993 against S. Mantsuna Co., Ltd., the defendant, (hereinafter "Mantsuna"), a Japanese corporation. The action arises out of a July 4, 1990 fireworks display in the City of Torrington, Connecticut, when a fireworks shell, allegedly manufactured by the defendant, malfunctioned, thereby causing injury to spectators. As a result of that incident, numerous lawsuits were filed against Vitale, the company that contracted with the City of Torrington to display the fireworks, and Lupoli, a pyrotechnician who set up and discharged the fireworks. In count one of the complaint the plaintiffs seek indemnification under Article 2 of the Uniform Commercial Code, General Statutes § 42a-1-101 et. seq.; in count two the plaintiffs seek indemnification under the common law; and in Count 3 the plaintiffs seek recovery under Connecticut's Product Liability Act, General Statutes § 52-572m et. seq.
On August 6, 1993, the defendant filed a motion to CT Page 10274 dismiss the complaint claiming that the court lacks inpersonam jurisdiction under the Connecticut long-arm statute, General Statutes § 33-411, and under theFourteenth Amendment to the United States Constitution.[1]
In support of its motion, the defendant filed an affidavit of its general manager pursuant to Practice Book § 143.
The plaintiffs assert in their memorandum in opposition, filed on June 30, 1994, that jurisdiction is proper under General Statutes § 33-411(c)(3) as well as under the federal constitution. In support of their memorandum, the plaintiffs filed affidavits of Rocco Vitale, President of Vitale, and of Kenneth Lupoli. The defendants filed a reply brief on July 15, 1994. The plaintiffs filed a supplemental memorandum of law in opposition to defendant's motion to dismiss on July 27, 1994. Oral argument was heard on July 5, 1994 wherein this court denied an evidentiary hearing.
Lack of personal jurisdiction is properly raised by a motion to dismiss. Chrysler Credit Corp. v. FairfieldChrysler-Plymouth, Inc., 180 Conn. 223, 429 A.2d 478
(1980). When jurisdiction is asserted on the basis of the long-arm statutes, and the defendant challenges jurisdiction by a motion to dismiss, the burden of proof is on the plaintiff to present evidence that will establish jurisdiction. Standard Tallow Corp. v. Jowdy,190 Conn. 48, 459 A.2d 503 (1983). The court, in deciding a motion to dismiss, must consider the allegations of the complaint in their most favorable light. A motion to dismiss will be denied where a plaintiff is able to make a prima facie showing that defendant's conduct was sufficient for a court to exercise personal jurisdiction." In re ConnecticutAsbestos Litigation, 677 F. Sup. 70, 72 (D. Conn. 1986).
The complaint alleges that jurisdiction attaches under Connecticut General Statutes § 33-411(c)(3), which provides in pertinent part: "Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively CT Page 10275 in interstate or foreign commerce, on any cause of action arising as follows . . . (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers . . . ." The defendant, who does not specifically address § 33-411(c)(3), submits that jurisdiction does not attach under any section of the long-arm statute. The defendant further maintains that the plaintiffs have no standing under § 33-411(c) to commence a lawsuit in Connecticut. In addition, the defendant asserts in its reply brief that there is a prior pending action between Vitale and the defendant which deprives this court of jurisdiction.
 I.
An action may be subject to a motion to dismiss under the prior pending action doctrine. Halpern v.Board of Education, 196 Conn. 647, 652 n. 4, 495 A.2d 264
(1985). The defendant submits there is a prior pending action between it and Vitale in Pennsylvania state court. The doctrine, however, only applies to suits brought in the same jurisdiction. Beaudoin v. Town Oil Co.,207 Conn. 575, 584, 542 A.2d 1124 (1988). Accordingly, the defendant's claim of a prior pending action must fail.
 II.
Section 33-411(c) provides that a foreign corporation is subject to suit in Connecticut by either a resident of the state or by a person having a usual place of business in Connecticut.
The plaintiffs maintain in their memorandum of law in opposition to the defendant's motion to dismiss that Vitale had a usual place of business at Lupoli's residence in Connecticut sufficient to bring Vitale within the purview of § 33-411(c). The plaintiffs aver that Lupoli regularly conducted business for Vitale at Lupoli's home in Hamden, Connecticut. (Affidavit of Rocco Vitale, para. 28). Lupoli's affidavit avers that CT Page 10276 Lupoli's residence was a Vitale regional office from 1988 through 1990. The affidavits of Rocco Vitale and of Lupoli establish that Lupoli was employed by Vitale from 1988 to 1990 as an account executive and pyrotechnics supervisor. Lupoli's affidavit avers the following. Lupoli displayed approximately ten shows for Vitale during 1988 and 1990, all of which contained Mantsuna shells. The shells used in the Torrington display were shipped from Vitale in New Castle, Pennsylvania to Connecticut Blasting and Explosives in Portland, Connecticut. Lupoli transported the shells from Portland to Torrington. According to the affidavits of both Rocco Vitale and Lupoli, Lupoli solicited the City of Torrington on behalf of Vitale to provide the July 4, 1990 fireworks display.
Vitale offers no further evidence of its relationship with Lupoli or of its maintenance of a usual place of business in Connecticut. The plaintiffs do, however, refer to Black's Law Dictionary which defines "usual place of business" as "[t]he location at which one carries on his business or employment." Black's Law Dictionary (5th Ed. 1983). The plaintiffs note that the term is also defined as "the place where the business is carried on by its owners under their control and on their own account." (Plaintiffs' Supplemental Memorandum of Law in Opposition to Defendant's Motion to Dismiss, July 27, 1994, p. 4, citing C.J.S. § 2002). The plaintiffs assert that they have presented facts sufficient to fall within this definition. The defendant contends that because Vitale has admitted its principal place of business is in Pennsylvania it therefore cannot have a "usual place of business" in Connecticut. (Defendant's Reply Brief, July 15, 1994, p. 2).
In further effort to establish standing under the Connecticut long-arm statute, Vitale relies on the fact that Lupoli is a resident of Connecticut. Vitale posits in its memorandum of law in opposition to defendant's motion to dismiss that because Lupoli is a Connecticut resident, Vitale is as well.
With respect to plaintiff Lupoli, the defendant appears to argue that since natural persons may qualify as plaintiffs by being either a resident or by having a CT Page 10277 usual place of business in Connecticut, Lupoli may have standing only if he is an independent contractor. E.Stephenson. Connecticut Civil Procedure (2d Ed. 1970, sec. 30, p. 118). If, however, Lupoli is an employee of Vitale, defendant argues, he has no basis to assert jurisdiction since, as an employee, his claim is derivative of that of his employer. (Defendant's Reply Brief, July 15, 1994, p. 2). Defendant offers no law in support of this argument.
In further support of their argument that jurisdiction is proper, the plaintiffs state that Connecticut law allows a party sued in Connecticut to seek contribution and indemnification in Connecticut. In support of this argument the plaintiffs cite toConnecticut General Life Insurance Co. v. SVA, Inc.,743 F. Sup. 107 (D. Conn. 1990). The action in SVA, relied upon by the plaintiffs in the present case, involved a third party action for indemnification. The court in SVA
exercised jurisdiction over the third party defendant explaining that § 33-411 did not bar a third-party plaintiff from impleading a third-party defendant since § 33-411 is directed toward assertions of original jurisdiction. (Citation omitted.) Id., 109. "Where the court has jurisdiction over the underlying claim, the court . . . [has] personal jurisdiction over an impleaded party." Id. In SVA, the third-party plaintiff admitted that its principal place of business was in Massachusetts. Thus, the court concluded that SVA would have been precluded from bringing the action as aplaintiff under the Connecticut long-arm statute. Id.
"[I]n the absence of standing, the court lacks subject matter jurisdiction to determine the merits of the case." (Citations omitted.) Sadloski v. Manchester,228 Conn. 79, 83, 634 A.2d 888 (1993). "A possible absence of subject matter jurisdiction must be addressed and decided whenever the issue is raised." Id., 84;Serrani v. Board of Ethics, 225 Conn. 305, 308,622 A.2d 1009 (1993). A motion to dismiss may be used to contest standing since "without a finding with respect to plaintiff[s'] standing, the trial court ha[s] no authority to consider . . . the . . . case on its merits." Sadloski v. Manchester, supra, 228 Conn. 82. In addition, a court may raise the issue of lack of CT Page 10278 subject matter jurisdiction sua sponte. Park CityHospital v. Commission on Hospitals Health Care,210 Conn. 697, 702, 556 A.2d 602 (1989). The explicit language of § 33-411(c) limits the privilege of long-arm jurisdiction to parties that reside or have a usual place of business within this state. The case law is scant on what constitutes a "usual place of business" within the meaning of § 33-411(c). It is questionable whether the plaintiffs have established facts sufficient to find that Vitale maintained a usual place of business in Connecticut. The dicta in SVA suggests that a plaintiff corporation that admits its principal place of business is in another state does not have standing under § 33-411(c). Furthermore, Vitale's reliance on the fact that Lupoli is a Connecticut resident to establish jurisdiction as to Vitale is attenuated at best. Vitale should not be able to use Lupoli as a bootstrap to establish jurisdiction. Moreover, Vitale's argument ignores the principle that "[c]orporations can qualify as plaintiffs only by having a usual place of business in [Connecticut], since even a domestic corporation cannot be regarded as a `resident.'" E. Stephenson, ConnecticutCivil Procedure (2d Ed. 1970, sec. 30, p. 118). With respect to Lupoli, Lupoli has standing under § 33-411(c) since he is a resident of Connecticut. With respect to the defendant's claim that Lupoli does not have standing if he is an employee of Vitale, it is noted that defendant has failed to offer any law in support if this proposition.
 III.
Analyzing a challenge to personal jurisdiction over a foreign corporation is a two-step process. Frazer v.McGowan, 198 Conn. 243, 246, 502 A.2d 905 (1986); see also United States Trust Co. v. Bohart, 197 Conn. 34,38-39, 495 A.2d 1034 (1985); Lombard Brothers, Inc. v.General Asset Management Co., 190 Conn. 245, 250,460 A.2d 481 (1983); Gaudio v. Gaudio, 23 Conn. App. 287,298-300, 580 A.2d 1212, cert. denied, 217 Conn. 803,584 A.2d 471 (1990); Hill v. W.R. Grace Co., 42 Conn. Sup. 25,28, 598 A.2d 1107 (1991, Licari, J.). The court must first inquire whether, under the facts of the case, the state's long-arm statute may be asserted as a basis for jurisdiction over the defendant. Frazer v. McGowan, CT Page 10279 supra, 198 Conn. 246; Lombard Brothers, Inc. v. GeneralAsset Management Co., supra, 190 Conn. 250. Once jurisdiction has attached under the long-arm statute, the court must then determine whether the exercise of jurisdiction satisfies the federal constitutional requirements of due process. Frazer v. McGowan, supra,198 Conn. 246.
The plaintiffs assert that jurisdiction is proper under § 33-411(c)(3) because the defendant had a reasonable expectation that its goods were to be used or consumed in Connecticut. In establishing facts pertaining to personal jurisdiction, it is the plaintiff who bears the burden of proof. Standard Tallow Corp. v.Jowdy, supra, 190 Conn. 53-54. The courts of Connecticut have authority to determine whether personal jurisdiction may be asserted against a foreign corporation. Wallentav. Avis Rent A Car System, Inc., 10 Conn. App. 201, 207,522 A.2d 820 (1987).
The information relevant to the plaintiffs' assertion of jurisdiction over the defendant is contained in the parties' memoranda and in the affidavit of Rocco Vitale. The information may be summarized as follows. In 1981 the defendant contacted Vitale regarding Vitale's purchase of Mantsuna aerial fireworks shells. (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss, June 30, 1994, p. 2). From 1981 to 1990 Vitale purchased $582,132.94 of Mantsuna shells to be used throughout the United States. (Plaintiffs' Memorandum in Opposition, June 30, 1994, p. 3). Vitale placed orders with Mantsuna during or immediately after face-to-face meetings with Mantsuna representatives in the United States. (Affidavit of Rocco Vitale, para. 7; Plaintiff's Memorandum in Opposition, June 30, 1993, p. 3). The representatives included Ray Okuyama, the managing director of Mantsuna, and Hiroo Ishibashi, the general manager of Mantsuna. (Affidavit of Rocco Vitale, para. 7). The plaintiffs state that the scope of Vitale's business was discussed at certain of these meetings. (Affidavit of Rocco Vitale, para. 7). It is plaintiffs' contention that as a result of these interactions the defendant knew or should have known about the national scope of Vitale's business. CT Page 10280
Rocco Vitale's affidavit further avers that these officers of Mantsuna attended pyrotechnics trade shows and conventions in the United States. At these conventions and trade shows, Vitale had on display advertisements that contained "prominent" endorsements from its customers, including Connecticut customers. In addition, the plaintiff advertised in "numerous trade magazines, journals, letters, telecommunications, state parks and recreation magazines, and telephone book yellow pages" which stated that Vitale had the capability to perform fireworks displays in forty-eight states. (Affidavit of Rocco Vitale, para. 29). The plaintiffs aver that the defendant had access to this material at the trade shows and conventions. Essentially, the plaintiffs argue that the defendant had constructive notice of the national scope of the plaintiff's business and therefore the defendant had a reasonable expectation that its product might be used or consumed in Connecticut. On this basis, the plaintiffs assert that Connecticut may properly assert jurisdiction over the defendant.
Generally, the issue before the court is whether the facts alleged by the plaintiff are sufficient as a matter of law to establish jurisdiction over Mantsuna under § 33-411(c)(3).[2] More specifically, the issue is whether the facts establish that the defendant had a reasonable expectation that its goods would be used or consumed in Connecticut.
The defendant claims that it never transacted business in Connecticut, had no certificate of authority to transact business in Connecticut, did not advertise in Connecticut, or direct any advertisement to Connecticut, had no office, no salesmen, no telephone book listing, no contracts and no assets in Connecticut. (Affidavit of Hiroo Ishibashi, para. 4; Memorandum of Law in Support of Motion to Dismiss, August 6, 1993, pp. 1-2). However, these facts are not necessary to the exercise of inpersonam jurisdiction over the defendant under the Connecticut long-arm statute. General Statutes § 33-144(c) provides that a foreign corporation shall be subject to suit in Connecticut whether or not it is transacting or has transacted business in this state. CT Page 10281 Furthermore, the plaintiffs do not rely on the defendant's transaction of business in Connecticut as a basis of jurisdiction. Thus, the facts related to the transaction of business will be addressed only to the extent that they are relevant to a determination of personal jurisdiction under § 33-411(c)(3) and under the federal constitution.
Connecticut courts have found certain factors relevant to a determination of whether a defendant has a reasonable expectation that its goods are to be used or consumed in Connecticut. See Bourquin v. Melsungen,4 Conn. L. Rptr. 287 (July 11, 1991, Maloney, J.) (suggesting that evidence that the plaintiff reported its Connecticut sales to a foreign defendant would be sufficient to establish that the defendant had a reasonable expectation its goods were to be used or consumed in Connecticut); Continental Insurance Company,Inc. v. Miller Yacht Sales, Inc., 4 Conn. L. Rptr. 317
(July 11, 1991, Maloney, J.) (finding that the defendant's repeated solicitation of boat sales at boat shows in Connecticut was enough to conclude that "defendant manufactured the boat `with the reasonable expectation that [it] would be used or consumed'" in Connecticut as provided in 33-411(c)(3)); Ponzo v.Omega Plastics Corp., 8 Conn. L. Rptr. 581, 582 (June 12, 1992, Hendel, J.) (holding that the defendant's shipment of goods it manufactured in New Jersey to the plaintiff in Connecticut pursuant to the plaintiff's solicitation of orders was sufficient for the court to find a "reasonable expectation" that the goods were to be used or consumed in Connecticut); Natale v. DevelopmentAssociates, 9 Conn. L. Rptr. 432, 435 (July 26, 1993, Higgins, J.) (denying motion to dismiss because the plaintiff sustained its burden of showing the defendant corporation had "actual or constructive knowledge, through its agents or employees, that its . . . product was ultimately being purchased and consumed within the state").
The foregoing cases set forth the factors relevant to determining whether the plaintiffs have established that Mantsuna had a reasonable expectation its goods would be used or consumed in Connecticut. In Bourquin v.Melsungen, supra, 4 Conn. L. Rptr. 287, the court looked CT Page 10282 for actual notice to the defendant corporation to satisfy the requirements of § 33-411(c)(3). In the present case, however, Vitale has not alleged that it reported its Connecticut sales to Mantsuna. In Continental InsuranceCompany Inc. v. Miller Yacht Sales, Inc., supra,4 Conn. L. Rptr. 317, the court found the defendant's repeated solicitation of sales persuasive. Vitale, however, has not alleged that the defendant solicited sales in Connecticut. In Ponzo v. Omega Plastics Corp., supra,8 Conn. L. Rptr. 581, the court found that shipment of goods to Connecticut was sufficient to meet the jurisdictional requirements of § 33-411(c)(3). Vitale has not offered evidence that Mantsuna shipped its product to Connecticut, which was central to the court's decision in Ponzo. In Natale v. Development Associates, supra, 9 Conn. L. Rptr. 432, distribution of the product, once it left the defendant corporation's hands, was solely within the control and discretion of the distributor. Id., 435. On this basis, the court noted in dicta that the defendant corporation might have no reasonable expectation as to where the product would ultimately be consumed. Id. Similarly, Vitale has offered no evidence that distribution of the Mantsuna fireworks, once they left Mantsuna's control, would not remain within Vitale's sole control. In Natale, the court observed that the fact that the "defendant corporation's only contact with the state was through an independent contractor and distributor" was not a bar to personal jurisdiction over the defendant corporation under § 33-411(c)(3). Id., 434. In the instant action, however, the plaintiffs allege that Mantsuna's contact was with Vitale in Pennsylvania, not with Lupoli, Vitale's alleged employee in Connecticut.
 IV.
While courts have held that the jurisdictional analysis is a two-step process, it has been stated that "[u]nder General Statutes § 33-411(c)(3), the only significant limitation on the reach of the long-arm statute is whether or not the exercise of personal jurisdiction over the defendant corporation complies with the constitutional requirements of due process." Natalev. Development Associates, supra, 9 Conn. L. Rptr. 434. Thus, the "reasonable expectation" test under § 33-411(c)(3) CT Page 10283 is the same as the federal minimum contacts analysis. As stated in Sheridan v. Cadet Chemical Corp.,25 Conn. Sup. 17, 21 (Super.Ct. 1963), in permitting suits against foreign corporations on the basis of a "reasonable expectation" that goods are to be used or consumed in Connecticut, the legislature has adopted the principles set forth in International Shoe Co. v.Washington, 326 U.S. 310, 316 (1945)." See McClung v.Super Glue Corp., 16 Conn. L. Trib. 39, 35 (D. Conn. 1990) ("The requirement of `reasonable expectation' that the product would be used in Connecticut merges with the constitutional requirement that defendant have purposefully established minimum contacts here."). Accordingly, the first prong of the test of jurisdiction relating to in personam jurisdiction under the Connecticut long-arm statute cannot be dispositive when jurisdiction is asserted on the basis of § 33-411(c)(3). An analysis of personal jurisdiction over Mantsuna under federal constitutional notions is necessary.
"The twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." United States Trust Co. v. Bohart, 197 Conn. 34,41; Hill v. W.R. Grace Co., supra, 42 Conn. Sup. 25
(1991, Licari, J.). "[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." United States Trust Co. v. Bohart, supra, 197 Conn. 41, quoting World-Wide Volkswagen Corp.v. Woodson, 444 U.S. 286, 287, 100 S.Ct. 559,62 L.Ed.2d 490 (1980). "The number of contacts does not appear to be the test applied by the courts, but the nature of the contact, whether one or many seems to control."Sheridan v. Cadet Chemical Corp., supra, 25 Conn. Sup. 21. Due process requires that a defendant cannot be subject to the in personam jurisdiction of the courts of a state unless the defendant has certain "minimum contacts" with the forum such that the maintenance of the suit does not offend "`traditional notions of fair play and substantial justice.'" (Citations omitted; internal quotation marks omitted.) International Shoe Co. v.Washington, 326 U.S. 310, 316, 66 S.Ct. 154,90 L.Ed. 95 (1945). CT Page 10284
The plaintiffs assert that Justice Brennan's concurring opinion in Asahi Metal Industry Co. v.Superior Court, 480 U.S. 102, S.Ct. 1026,94 L.Ed.2d 92 (1987), adopted by the district court in McClung v.Superior Court, supra, 16 Conn. L. Trib. 39, 35, supports a finding of personal jurisdiction in this case.[3] In his concurring opinion, Justice Brennan stated that "[a]s long as a participant in [the process of placing goods in the stream of commerce] is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise." Asahi MentalIndustry Co. v. Superior Court, supra, 480 U.S. 117. Justice Brennan rejected the notion that placement of a product in the stream of commerce, without more, is not an act of defendant purposefully directed at the forum state. Id. The plaintiffs argue that jurisdiction is proper over defendant in this case under the reasoning and facts of Shopey v. Lupoli, Superior Court, judicial district of Litchfield, 055850 (January 22, 1992, Pickett, J.), a case also arising out of the 1990 Torrington fireworks display. In Shopey, the plaintiffs filed suit against Fair's Wood Service, the manufacturer of the mortar rack used in the display. While jurisdiction over the defendant was based on General Statutes § 52-59b(a)(3), the defendant argued that the minimum contacts required to assert jurisdiction over the defendant under the due process clause of theFourteenth Amendment to the United States Constitution were lacking. In Shopey, the court applied the McClung analysis and found that the defendant was aware or should have been aware that its final product was being marketed in Connecticut. Under McClung, it is not unreasonable to subject a manufacturer of a defective product to suit in a state where the product is in the state through the effort of the manufacturer to serve the market there.McClung v. Superior Court, supra, 16 Conn. L. Trib. 35. The court in Shopey looked to the fact that the defendant had done business with Vitale, a co-defendant in that case, for eleven years, that the only mortar racks Vitale purchased since 1980 were from the defendant, that Vitale extensively advertised its services and the scope of its business, and that Vitale told Mr. Fair of the scope of Vitale's business. On this basis, the court held it was reasonable for defendant Fair to assume Connecticut would fall within the scope of Vitale's market. CT Page 10285
The facts in the present case are distinguishable from the facts in the Shopey case. Fair, as an entity located within the United States, would have more exposure to Vitale's advertising than would a foreign corporation. Vitale does not claim it advertised in Japan or otherwise directed any advertising to fireworks manufacturers generally. Rather, the plaintiffs claim that the only exposure to Vitale's advertising the defendant had was from material available to the defendant at "several" trade shows in the United States. (Affidavit of Rocco Vitale, para. 30). The plaintiffs do not claim this advertising was directed at Mantsuna. Furthermore, unlike Shopey, Vitale summarily claims that Vitale discussed the national scope of its business with Mantsuna. The affidavit of Rocco Vitale contains only conclusory language that "Mr. Okuyama was aware that Vitale was a national company doing business in all states east of the Mississippi River . . . ." (Affidavit of Rocco Vitale, para. 8). In addition, the plaintiffs offer no evidence that the sale of Mantsuna's product arose from the effort of Mantsuna to serve the market in this state. Additionally, in Shopey, jurisdiction was asserted over Fair under General Statutes 52-59b(a)(3)(A) which provides that jurisdiction is proper over any foreign partnership deriving substantial revenue from goods used within this state. The court found that defendant Fair derived substantial revenue from goods used either in Connecticut or in interstate commerce sufficient to place defendant within 52-59b(a)(3). While the court in Shopey adopted Justice Brennan's opinion inAsahi, defendant Fair, although not in control of the distribution process, was aware of the distribution system and knew it would benefit economically from the sale of the product in Connecticut. The plaintiffs have offered no evidence of this type, which was central to the court's decision in Shopey. For the foregoing reasons, Shopey is distinguishable from the case at bar.
The defendant invokes the plurality opinion inAsahi, wherein the Court stated that mere awareness that the stream of commerce may sweep a product into the forum state is not sufficient for minimum contacts. AsahiMetal Industry Co. v. Superior Court, 480 U.S. 112. "[T]he foreseeability appropriate for the due process CT Page 10286 analysis is not the mere likelihood that a product will find its way into the forum state." Winkleman v. Dohm,6 Conn. L. Rptr. 381, 383 (April 27, 1992, Barnett, J.). According to Asahi, "[t]he `substantial connection' between the defendant and the forum State necessary for a finding of minimum contacts must come about by anaction of defendant purposefully directed toward theforum State. The placement of a product into the stream of commerce, without more, is not an action of the defendant purposefully directed toward the forum State."Asahi, supra, 480 U.S. 112; see Burger King v. Rudzewicz,471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).
Due process does not allow the exercise of jurisdiction over a defendant whose sole contact with the forum is that the product foreseeably could cause injury within the state. World-Wide Volkswagen Corp. v.Woodson, supra, 444 U.S. 295. In Shaw v. AmericanCyanamid, 534 F. Sup. 527 (D. Conn. 1982), the district court noted that "[a]fter World-Wide Volkswagen, the courts which have sustained jurisdiction on the basis of defendant's expectation that its goods would enter the forum state have done so in cases involving specific evidence that the defendant knew or should have known that its goods would be entering the forum jurisdiction." Id., 531. According to Shaw, "`foreseeability' can be a basis for jurisdiction only where the record will support a conclusion that the defendant knew its goods would enter the forum state either in the specific instance giving rise to the litigation or on a regular enough basis that it `has clear notice that it is subject to suit here.'" (Citations omitted.) Id., 532. The plaintiffs have offered no evidence that the defendant knew its fireworks shells would be used in the 1990 Torrington display or that the defendant knew its goods entered Connecticut at all.
Shaw is consistent with the reasoning of Hanson v.Denckla, 357 U.S. 235, 78 S.Ct. 1228, 1239,2 L.Ed.2d 1283 (1958), that is, minimum contacts must be based upon "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King v. Rudzewicz, supra, 471 U.S. 475. Thus, under the reasoning of Asahi, CT Page 10287 even if the plaintiffs established that Mantsuna was aware some of its product would find its way into Connecticut, the plaintiffs have not demonstrated any act by the defendant to "purposefully avail itself" of the Connecticut market. See Asahi Metal Industry Co. v.Superior Court, supra, 480 U.S. 112.
"The specific facts of each case necessarily determine the outcome of a minimum contacts analysis."United States Trust Co. v. Bohart, supra, 197 Conn. 42, citing Kulko v. California Superior Court, 436 U.S. 84,92 (1978); see also Frazer v. McGowan, supra, 198 Conn. 249;Burger King v. Rudzewicz, supra, 471 U.S. 478;International Shoe Co. v. Washington, supra, 326 U.S. 310. "Like any standard that requires a determination of `reasonableness', the `minimum contacts' test ofInternational Shoe, is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite `affiliating circumstances' are present." Standard Tallow Corp. v.Jowdy, supra, 190 Conn. 52. "Under subsection [33-411](c), consistent with the constitutional demands of due process, it is the totality of defendant's conduct and connection with this state that must be considered, on a case by case basis . . . ." Lombard Brothers, Inc.v. General Asset Management Co., supra, 190 Conn. 255. Rather than applying a "rigid formula," the court will "balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." (Citations omitted.) Zarlotas v. Nisenfeld,184 Conn. 471, 477, 440 A.2d 215 (1981). In resolving the issue of minimum contacts, the court must ascertain what is fair and reasonable under the circumstances.Gray v. American Radiator Standard Sanitary Corp.,22 Ill.2d 432, 441, 176 N.E.2d 761 (1961).
 V.
On the basis of the foregoing, the plaintiff has not met its burden of providing evidence sufficient to support a finding that Mantsuna had a reasonable expectation that its fireworks shells would be ultimately used within Connecticut such that Mantsuna would reasonably anticipate it may be haled before a Connecticut court to defend an action arising out of the CT Page 10288 use and consumption of its product.
Shipments to a customer engaged in interstate business and a claim of constructive notice of the national scope of that customer's business is not sufficient to establish a prima facie case of in personam
jurisdiction. Consequently, the defendant's motion to dismiss is granted.
PICKETT, J.