THOMAS HILL ET AL. *v.* W. R. GRACE AND COMPANY ET AL.

SUPERIOR COURT     JUDICIAL DISTRICT OF     FILE NO. 279647
FAIRFIELD

Memorandum filed August 27, 1991

*Sklarz & Early,* for the plaintiffs.

*Jacobs, Grudberg, Belt & Dow,* for the defendant Holland Company.

LICARI, J. The plaintiffs, Thomas Hill and Virginia Hill, both residents of Tennessee, commenced the present action against Holland Company (Holland) and six other defendants for asbestos related injuries allegedly resulting from work Thomas Hill performed while employed in Connecticut. Holland is an Illinois corporation with its principal place of business in Illinois. It never has conducted and never has been authorized to conduct business in Connecticut.

The complaint alleges some involvement with asbestos products by each defendant. The involvement of Holland appears to concern a rail welding machine (machine) manufactured by Holland and sold to the defendant National Railroad Passenger Corporation (Amtrak), a Pennsylvania corporation. Although the contract between Holland and Amtrak was made in Pennsylvania, the machine was delivered by Holland to Amtrak in New Haven, where it was installed. Thomas Hill alleges that his work on the machine exposed him to asbestos.

Holland moves to dismiss the complaint against it on the grounds that Connecticut has no in personam jurisdiction over it and, even if there were statutory author-

ity to assert jurisdiction, any assertion would violate the fourteenth amendment's due process clause.

The plaintiffs, in their objection to the motion to dismiss, set forth General Statutes § 33-411 (b), (c) (1) and (c) (3) as the authority for jurisdiction. They also cite various federal cases to support their position that jurisdiction over Holland would not violate due process.

Holland's contacts with the state of Connecticut are undisputed and can be summarized as follows. Holland entered into a contract with Amtrak for the sale of the machine. The contract specified that the machine was to be delivered by Holland to New Haven. By the terms of the aforesaid contract, Holland agreed to provide personnel to supervise and to instruct Amtrak personnel in the installation and start-up and maintenance of the machine. Holland shipped spare, collateral and replacement parts and equipment related to the machine to Connecticut. Subsequent to the aforesaid contract for sale of the machine, Holland entered into another contract with Amtrak for welding services. This contract was to be performed in Connecticut. Pursuant to this contract, Holland employed from two to nineteen people in Connecticut from April to October, 1977. Holland paid for unemployment compensation insurance in Connecticut for all or some part of 1977.

Holland has properly challenged the court's jurisdiction by way of a motion to dismiss. Practice Book §§ 142, 143. Where a motion to dismiss "is accompanied by supporting affidavits containing undisputed facts, the court may look to their content for determination of the jurisdictional issue . . . ." *Barde* v. *Board of Trustees,* 207 Conn. 59, 62, 539 A.2d 1000 (1988). If the court's jurisdiction is challenged by the defendant, the plaintiff has the burden of proving the requisite contacts with the forum state. *Standard Tallow Corporation* v. *Jowdy,* 190 Conn. 48, 53, 459 A.2d 503 (1983).

Holland challenges jurisdiction on two grounds: first, that there is no statutory authorization for assertion of in personam jurisdiction over it under the facts of the present case; and, second, that even if such authorization were to be found, the minimum contacts requisite to satisfy the due process clause of the United States constitution are not to be found. The question of whether personal jurisdiction exists over a foreign corporation depends on a two step analysis. *Lombard Bros., Inc.* v. *General Asset Management Co.,* 190 Conn. 245, 250, 460 A.2d 481 (1983). "[The court's] first inquiry must be whether [the Connecticut] long-arm statute authorizes the exercise of jurisdiction under the particular facts of [the] case. Only if [the court] find[s] the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction." Id.

I

CONNECTICUT'S LONG ARM STATUTE

The long arm statute in Connecticut as it pertains to foreign corporations is set forth in General Statutes § 33-411. The plaintiffs claim that this court has jurisdiction over Holland pursuant to § 33-411 (b) and (c). Subsection (c) of § 33-411 provides no basis for jurisdiction since it is clear on its face that only residents of Connecticut and persons with a "usual place of business" in Connecticut may invoke that subsection. See General Statutes § 33-411 (c); 1 E. Stephenson, Connecticut Civil Procedure (2d Ed.) § 30, p. 118 (jurisdiction can be invoked only by resident or person having usual place of business in state). The fact that Thomas Hill was a resident of Connecticut from 1978 to 1986 is irrelevant as the statute does not encompass former residents.[1]

---

[1] Whether a foreign corporation should be able to be sued by a foreign citizen in a state's court is a matter of policy left to the legislature. " 'There

Both plaintiffs are residents of Tennessee, not Connecticut. There is no allegation that either plaintiff maintains a usual place of business in Connecticut. Accordingly, § 33-411 (c) is inapplicable and only § 33-411 (b) will be examined. That section states that "[e]very foreign corporation which transacts business in this state in violation of section 33-395[2] or 33-396[3] shall be subject to suit in this state upon any cause of action arising out of such business."

Two conditions must be met before jurisdiction over a foreign corporation pursuant to § 33-411 (b) will attach: (1) the foreign corporation has transacted business in this state in violation of General Statutes §§ 33-395 or 33-396; and (2) a cause of action arises out of the transaction of such business. *Lombard Bros., Inc.* v. *General Asset Management Co.*, supra, 250–51.

The first issue before the court is whether Holland has transacted business in Connecticut and whether such business was in violation of § 33-396.

The term "transacting business" has been interpreted to embrace " 'a single purposeful business transaction.' " *Rosenblit* v. *Danaher,* 206 Conn. 125, 138, 537 A.2d 145 (1988); *Zartolas* v. *Nisenfeld,* 184 Conn. 471, 474, 440 A.2d 179 (1981) (interpreting General Statutes § 52-59b (a) (1), long arm statute covering nonresidents and foreign partnerships); *Hi Fashion Wigs* v. *Hammond Advertising, Inc.,* 32 N.Y.2d 583, 586, 300 N.E.2d 421, 347 N.Y.S.2d 47 (1973) (interpret-

---

is nothing to compel a state to exercise jurisdiction over a foreign corporation unless it chooses to do so, and the extent to which it so chooses is a matter for the law of the state as made by its legislature.' " *Apolinario* v. *Avco Corporation,* 561 F. Sup. 608, 611 (D. Conn. 1982).

[2] Section 33-395 does not apply in the present case.

[3] General Statutes § 33-396 states in pertinent part: "(a) No foreign corporation . . . shall transact business in this state until it has procured a certificate of authority so to do from the secretary of the state . . . ."

ing New York counterpart of General Statutes § 33-411 [b]). Under the facts here, Holland has transacted business in Connecticut.

Between April, 1977, and October, 1977, Holland had employees in Connecticut performing welding services. The extent of the welding services is set out in the purchase order dated January 31, 1977, annexed as exhibit E to the plaintiffs' memorandum of law. It states in relevant part that "[t]he welding service [provided by Holland] shall . . . continue uninterrupted during a minimum of two (2) eight hour shifts per day until . . . delivery of [the machine] ordered by Amtrak. . . ." Section IV of the purchase order indicates that equipment belonging to Holland was transported to Connecticut for purposes of completing the welding services. Section XII of the purchase order states in relevant part that "the personnel performing services . . . shall . . . be under [Holland's] exclusive direction and control, and shall be employees of [Holland] and not of [Amtrak]. [Holland] shall pay all wages . . . and shall be responsible for all reports and obligations respecting them relating to social security, income tax, withholding, unemployment compensation, workmen's compensation." In 1977, in connection with this employment, Holland paid unemployment compensation insurance in Connecticut.

At some time subsequent to October, 1977, the machine was delivered by Holland to Amtrak in Connecticut where it was installed. It is unclear whether Holland instructed Amtrak personnel in the operation and maintenance of the machine, but Holland has admitted that spare, collateral and replacement parts and equipment related to the machine were shipped to Amtrak in Connecticut.

Holland argues that business transacted in interstate commerce is excluded by General Statutes

§ 33-397 (b) (8)[4] from the certificate of authority requirement of § 33-396, and, therefore, § 33-411 (b) cannot apply to Holland because no transaction of business occurred. Holland misreads the statute. "A foreign corporation shall not be considered to be transacting business in this state solely because it carries on in this state one or more of the enumerated activities [of § 33-397 (b)]. This does not exclude a finding that a foreign corporation transacts business in this state if its other activities lead to that conclusion." *Connecticut Tool & Mfg. Co.* v. *Bowsteel Distributors, Inc.,* 24 Conn. Sup. 290, 296, 190 A.2d 236 (1963).

Further, the Supreme Court has determined that §§ 33-396 and 33-397 provide no guidance for interpreting § 52-59b, the long arm statute applicable to non-residents and foreign partnerships. *Zartolas* v. *Nisenfeld,* supra, 476 n.4. Those statutes likewise have

---

[4] General Statutes § 33-397 provides in pertinent part: "(b) Without excluding other activities which may not constitute transacting business in this state, a foreign corporation shall not be considered to be transacting business in this state, for the purposes of this chapter, by reason of carrying on in this state any one or more of the following activities: (1) Maintaining or defending any action or suit or any administrative or arbitration proceeding, or effecting the settlement thereof or the settlement of claims or disputes, but nothing in this subdivision shall entitle foreign corporations to maintain suit in this state in violation of section 33-412; (2) holding meetings of its directors or shareholders or carrying on other activities concerning its internal affairs; (3) maintaining bank accounts or borrowing money, with or without security, even if such borrowings are repeated and continuous transactions; (4) maintaining offices or agencies for the transfer, exchange and registration of its securities, or appointing and maintaining trustees or depositaries with relation to its securities; (5) soliciting or procuring orders, whether by mail or through employees or agents or otherwise, where such orders require acceptance without this state before becoming binding contracts; (6) creating evidences of debt, mortgages or liens on real or personal property; (7) taking security for or collecting debts due it or enforcing any rights in property securing the same; (8) transacting business in interstate commerce; (9) conducting an isolated transaction completed within a period of thirty days and not in the course of a number of repeated transactions of like nature."

no applicability to the interpretation of "transacting business" in § 33-411 (b). See also *Lombard Bros., Inc.* v. *General Asset Management Co.*, supra, 254–55 (factors excluded by § 33-397 may be relevant in determining whether defendant has sufficient minimum contacts with Connecticut).

In light of the totality of Holland's activities in Connecticut as recited above, Holland "transacted business" in this state for purposes of § 33-411 (b). At least some of the business transacted in this state required Holland to obtain a certificate of authority from the secretary of the state, and Holland's failure to do so constituted a violation of § 33-396.

The next issue is whether "the present litigation bears some connection with the business conducted by the foreign corporation in this state." *Lombard Bros., Inc.* v. *General Asset Management Co.*, supra, 252; General Statutes § 33-411 (b). "In determining whether the plaintiffs' cause of action arose from the defendants' transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." *Zartolas* v. *Nisenfeld,* supra, 477.

The claims against Holland are for products liability, negligence, breach of warranty, and loss of consortium, all allegedly arising from Thomas Hill's exposure to asbestos during the times he worked on Holland's machine while employed in Connecticut. These claims are causally related to the business that Holland transacted in Connecticut.

## II

### DUE PROCESS

Before a Connecticut court can assert in personam jurisdiction over a foreign corporation pursuant to the

state's long arm statute, the court must determine whether the foreign corporation has sufficient contacts with the state to satisfy constitutional due process. *International Shoe Co.* v. *Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 951 (1945); *Lombard Bros., Inc.* v. *General Asset Management Co.,* supra, 250. "The contacts must be of a nature where 'the traditional notions of fair play and substantial justice' are not offended by requiring a party to defend his case in the forum state."*In re Connecticut Asbestos Litigation,* 677 F. Sup. 70, 73 (D. Conn. 1986), quoting *International Shoe Co.* v. *Washington,* supra, 316. The defendant's "conduct and connection with the forum State [must be] such that [it] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corporation* v. *Woodson,* 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980). Thus, "[t]he twin touchstones of due process analysis under the minimal contacts doctrine are foreseeability and fairness." *United States Trust Co.* v. *Bohart,* 197 Conn. 34, 41, 495 A.2d 1034 (1985).

Connecticut's assertion of jurisdiction over Holland does not offend constitutional due process. Contrary to Holland's depiction of its contacts with Connecticut as a single, isolated occurrence, Holland was physically present in the state for seven months, employed people in Connecticut, and paid unemployment insurance to Connecticut. The machine that allegedly injured Thomas Hill, described as an A-1 rail welding plant, was manufactured by Holland and brought into Connecticut by Holland. The plant appears to consist of a welder car, a shear car, two rack cars and a saw car weighing 140 tons or more. The plant cost $1.7 million.

Holland knew the machine was to be installed in Connecticut. It was reasonable for Holland to anticipate that it might be subjected to the jurisdiction of the courts in Connecticut. The facts of the present case are

distinguishable from *World-Wide Volkswagen* where the defendant corporation had no connection to the forum state other than a possibility that one of its products might enter the state. *World-Wide Volkswagen Corporation* v. *Woodson,* supra, 297.

The defendant Holland "purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut]"; *Hanson* v. *Denckla,* 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958); and for this reason and the other reasons discussed above, Holland cannot now claim that it is unfair for it to be forced to be required to litigate in Connecticut.

The motion to dismiss is denied.