[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case comes before the court on the defendants' motion to dismiss for lack of in personam jurisdiction and, alternatively, on grounds of forum non conveniens. The defendants further assert that this case should not be decided by this court because of the presence of a prior pending action between the CT Page 4680 parties in New York.
The defendants, Bruce Fahey, Trevor Davis, Martin G. Berger and several partnerships and corporations through which they conduct their activities as developers of commercial real estate, are out-of-state residents who claim that they are not subject to suit in Connecticut under any provision of Connecticut's long arm statute and that the assertion by a Connecticut court of jurisdiction over them would deprive them of due process of law.
The court conducted a hearing limited to the facts relevant to the jurisdictional and other procedural issues raised.
I. In Personam Jurisdiction
In their verified complaint, the plaintiff The Cooper Companies, Inc. ("Cooper") identifies itself as a Delaware corporation with its principal place of business in New York City. The other plaintiff, The Cooper Real Estate Group, Inc., ("CREG") is identified as a wholly owned subsidiary of Cooper, with its principal place of business at the same address as Cooper in New York City. Thus, neither of the plaintiffs is a Connecticut resident.
The complaint alleges that the defendant corporations, Woodbridge Associates, Inc. ("WAI") and McCann Real Equities Series 10, Inc., are New York corporations with principal places of business in New York. The plaintiff alleges that the remaining defendants, Woodbridge Associates Limited Partnership ("WALP"), McCann/Real Equities Development Company ("McCann"), Madison Square Associates Limited Partnership ("MSALP") and Woodbridge Center Development Associates ("WCDA") are Delaware and New York partnerships all with principal places of business in New York City.
The individual defendants, Bruce Fahey, Trevor Davis, and Martin Berger are all identified in the complaint as residents of New York. In short, none of the plaintiffs and none of the defendants are residents of Connecticut.
The complaint alleges, in essence, that all defendants were engaged in plans to develop a shopping center that was to straddle Amity Road, with one portion in New Haven and the other just over the boundary into the town of Woodbridge, and that they excluded the plaintiffs from the development project after the plaintiffs had contributed funds for the preliminary stages of investigating the project. The plaintiffs maintain that this court has jurisdiction to hear their claims pursuant to 52-59b C.G.S. because 1) the defendants transacted business in Connecticut and 2) they committed tortious acts to prevent the plaintiffs from CT Page 4681 participating in the development of the project in Connecticut.
The plaintiffs also claim that the court has jurisdiction over the two corporate defendants pursuant to 33-411 (b) or 33-411 (c) C.G.S. because these foreign corporations transacted business in Connecticut, solicited business in Connecticut, and engaged in tortious conduct in Connecticut.
The plaintiffs' invocation of 33-411 (b) and (c) are readily disposed of.
Subsection (b) provides that "[e]very foreign corporation which transacts business in this state in violation of 33-395 or 33-396 shall be subject to suit in this state upon any cause of action arising out of such business." The evidentiary record presented to the court did not establish that the defendant corporations were in violation of 33-395 or 33-396 C.G.S. and the plaintiffs, in their post-hearing brief, fail even to articulate any unauthorized business the defendants are claimed to have transacted outside the ambit of 33-397 C.G.S. Other than activities exempted by 33-397 C.G.S. from the definition of "transacting business," the activities that the plaintiffs seek to characterize as "transacting business" consisted of hiring Connecticut professionals to investigate a Connecticut site. The plaintiffs acknowledge that 33-411 (b) is limited to suits "upon any cause of action arising out of such business." The gravamen of the plaintiffs' complaint is not the contract for services with the Connecticut lawyers, engineers or architects but rather the defendants' alleged obligation to the plaintiffs. Considerations of public policy and common sense, and the chronology and geography of the relevant factors, (See Hill v. W. R. Grace Co.,42 Conn. Sup. 25, 32 (1991)) do not lead to the conclusion that the efforts of New York parties to form a business relationship should be tried in Connecticut because one side of the transaction consulted Connecticut engineers and architects for the project under discussion.
Subsection (c) of 33-411 C.G.S. provides that a foreign corporation shall be subject to suit in Connecticut in certain circumstances, however, the plaintiffs have overlooked the provision of 33-411 (c) that limits such jurisdiction to suits brought "by a resident of this state or by a person having a usual place of business in this state." The plaintiffs did not establish either status.
Sections 33-411 (b) and (c) do not supply a source of in personam jurisdiction over either of the corporations named as defendants.
A determination of jurisdiction as to the various defendants CT Page 4682 pursuant to 52-59b C.G.S. requires a more complete analysis of the facts concerning each defendant.
McCann Real Equities Development Company is a New York partnership. Its partners include two New York corporations of which defendants Fahey, Davis and Berger are shareholders. McCann's business is locating and investigating potential development projects. If a project is actually pursued, a separate entity is formed to develop each project. Woodbridge Associates Limited Partnership was created to develop the Woodbridge site referred to above. Woodbridge Associates, Inc. is a general partner of Woodbridge Associates Limited Partnership.
Madison Square Associates Limited Partnership was created to take ownership of the New Haven portion of the project. McCann/Real Equities Series 10, Inc. is a general partner of Madison Square Associates Limited Partnership. Both of these limited partnerships and the corporations that are identified as their general partners operate out of the McCann offices in New York.
The remaining named defendant, Woodbridge Center Development Associates, was not proven to be an entity actually in existence.
The court finds that all of the negotiations between the defendants and the plaintiffs took place in New York, that the documents by which the defendants proposed various forms of business relations with the plaintiffs were drafted and discussed in New York, and that all correspondence between the plaintiffs and the defendants originated and was received in New York by entities operating from New York offices and places of business.
The following actions were shown to have occurred in Connecticut:
1. Defendants Fahey and Berger visited the Woodbridge and New Haven sites of the proposed joint venture on two occasions at times when representatives of the plaintiffs were also present to look at the site.
2. WALP spent some of the money contributed by the plaintiffs in consulting Connecticut lawyers at the firm of Cohen Acampora, engineers at Barakos-Landino, and an architect at Matthews, Thompson and Connell. All of these firms are located in the New Haven area, and WALP engaged them to perform preliminary investigations of the sites that the plaintiffs and the defendants were discussing developing together. At one meeting with an attorney at Cohen Acampora, representatives of both WALP and the plaintiffs were present to discuss the site plan applications. CT Page 4683
The funds contributed by the plaintiffs were held in a bank account as to which Brad Singer, a representative of the plaintiffs, and the defendant Trevor Davis had authority to sign checks.
Funds from the account were used to pay for the service of Connecticut consultants described above.
3. MSALP contracted with Barakos-Landino and the law firm of Avallone, Sklarz and Early in New Haven with regard to investigation of the Woodbridge project.
4. Defendant Trevor Davis visited Connecticut three or four times on behalf of MSALP or the corporate general partner, McCann/Real Equity Series 10, Inc., for unspecified purposes (Transcript Ex. D, p. 185-188).
5. Defendant Berger, whose salary was paid by the plaintiffs between August 1990 and February 1992, while he was engaged in trying to match the Coopers up with various development projects in various states, visited Connecticut on an average of one or two times a month over a period of three years with regard to the McCann projects in New Haven and Woodbridge.
6. Some of the funds contributed by the plaintiffs were used to make "good faith payments" as part of discussions by McCann with the owner of a ground lease on the Woodbridge site.
The plaintiffs claim that the various defendants were transacting business in Connecticut within the meaning of 52-59b(a)(1) C.G.S. As the Connecticut Supreme Court noted in Rosenblit v. Danaher, 206 Conn. 125, 138 (1988), 52-59b(a)(1) does not define what the phrase "transacts any business" means. In Zartolas v. Nisenfeld, 184 Conn. 471 (1981), the Court found that execution of a single warranty deed pursuant to a single sale of real property in Connecticut constituted "transacting business" in Connecticut where the suit involved the sale transaction. In Rosenblit, supra at 139-140, the court explained that the decisive element of the fact pattern in Zartolas was that the "fundamental incidents" of a warranty deed for land located in Connecticut, that is, the warranties of title, anticipate litigation in Connecticut as the only forum that could determine title to Connecticut land.
The transaction at issue in the instant case is not, in its fundamental incidents, the disposition of land in Connecticut but rather the monetary and other obligations between and among parties in a developmental project which only incidentally concerned land in Connecticut as the asset to be developed. Where the single transaction at issue is not so fundamentally based in CT Page 4684 Connecticut, as it was in Zartolas, the Supreme Court in Rosenblit v. Danaher, 206 Conn. 125, 140-141 (1988) made it clear that the trial court should scrutinize the real locus of the underlying transaction at issue.
While the words of 52-59b(a)(1) could be read as allowing jurisdiction generally if a defendant transacts any business in Connecticut, the Supreme Court in Zartolas, supra, at 477, made it clear that jurisdiction under this section exists only if the business that gives rise to the plaintiff's cause of action was transacted in Connecticut:
 In determining whether the plaintiffs' cause of action arose from the defendant's transaction of business within this state we do not resort to a rigid formula. Rather, we balance considerations of public policy, common sense, and the chronology and geography of the relevant factors . . . [citations omitted] In this case each of those considerations leads one to conclude that the plaintiffs' cause of action against the defendants arose from the defendants' transaction of business, in person, within the state.
Likewise, in Gaudio v. Gaudio, 23 CA 287 (1990), the transaction of business that rendered the alleged fraudulent transfer of stock subject to the jurisdiction of a Connecticut court was his visit to Connecticut to effectuate the purchase of the very stock at issue.
The transactions that occurred in Connecticut — the consultations with lawyers, architects, and engineers and the efforts to secure rights to the properties under discussion for development — are not in fact the subject matter of any of the plaintiffs' claims. Rather, the transaction on which the plaintiffs' claims are based is their relationship with the defendants concerning their role in the proposed development of sites in Connecticut.
Counts One, Two, Three and Four of the complaint are based on breach of an alleged partnership or joint venture agreement between the plaintiffs and the defendants. The alleged agreement was a transaction negotiated in New York using New York counsel concerning the financial and other relations of New York entities toward each other.
Count Five alleges that the defendants made fraudulent representations to the plaintiffs concerning the proposed structure of the relationship to be entered into. The evidence CT Page 4685 established that all negotiations and representations were made in meetings, telephone calls and correspondence that took place in New York.
The Sixth Count alleged negligent misrepresentation as to the proposed relationship. Again, all discussions and representations were made in New York.
The Seventh Count, titled "Breach of Agreement to Formalize Partnerships and/or Joint Ventures," and the Eighth Count, titled "Breach of Agreement to Negotiate in Good Faith" allege that the proposed relationship between the parties was repudiated during an exchange of draft documents. All phases of the effort to formalize the relationship under discussion were demonstrated to have occurred in New York.
In the Ninth Count, at paragraph 32, the plaintiffs allege that they "relied on the statements of the defendants that they would form a partnership and/or joint venture with the Cooper Plaintiff to fund, own, manage and share the profits of the enterprise" and that the defendants have repudiated their intention to form such a relationship. Again, negotiations and representations took place in New York.
The Tenth Count alleges breach of a fiduciary relationship, and the evidence did not establish that any agreement to undertake fiduciary obligations was entered into anywhere except in New York.
In the Eleventh, Twelfth, and Thirteenth Counts, the plaintiffs claim that the individual defendants tortiously interfered with the alleged partnership between the plaintiffs and the defendant partnerships and corporations. No facts concerning meetings, discussions or any other actions that might be a basis for the claim were shown to have taken place in Connecticut.
The Fourteenth Count, which alleges unjust enrichment, apparently concerns funds paid in New York to the defendants and the expectation of the plaintiffs of receiving consideration. That transaction has not been shown to have taken place in Connecticut.
The plaintiffs invoke the Connecticut Unfair Trade Practices Act, 42-110a et seq. C.G.S. ("CUTPA") in the Fifteenth Count of the complaint, in which they claim that the conduct of the defendants with regard to the proposed relationship constituted an unfair trade practice. Again, the focus is on the formation or prospect of forming a business relationship in New York.
The Sixteenth Count is directed solely against defendant CT Page 4686 Berger, who is alleged to have been supplied with an office and compensation by the plaintiffs and to have breached his employment agreement. The evidence indicates that if Berger was hired by the defendant, he was hired in New York, provided with an office in New York, and expected to perform as a consultant in New York and that he failed to perform his duties. While his visits to Connecticut may have occurred while he was employed by the plaintiffs, this count does not allege that conduct violative of his obligations took place in Connecticut but rather that he "diverted this business opportunity to the defendant entities . . ." (Count 16, para. 34). Since the defendants were also based in New York, the court cannot logically equate visits to a site in Connecticut as a transaction giving rise to the cause of action set forth in the final count of the complaint.
The efforts of the plaintiffs to form a business relationship with the defendants, the "transaction" put in issue in various ways in the complaint, do not describe Connecticut transactions, and the actual activities of the defendants in Connecticut are not the basis of the cause of action alleged.
The court finds no jurisdiction pursuant to 52-59b(a)(1).
Section 52-59b(a)(3), the other subsection of the long arm statute on which the plaintiffs rely, authorizes jurisdiction against a nonresident who commits a tortious act outside the state causing injury to person or property within the state. The plaintiffs are nonresidents. Their participation or nonparticipation in the development of the two parcels of Connecticut land identified as a development prospect will not result in injury to that property. The situation is even less cognizable as causing harm in Connecticut than the allegations in Greene v. Sha-Na-Na, 637 F. Sup. 591 (D.Conn. 1987), in which loss of income to a Connecticut resident was seen as too remote and speculative to authorize the federal court in Connecticut to exercise jurisdiction over a nonresident defendant alleged to have infringed the plaintiff's trademark. Section 52-59b(a)(3) is not a source of personal jurisdiction over any of the defendants in the circumstance shown.
The plaintiffs had the burden of presenting facts sufficient to establish in personam jurisdiction over each of the defendants Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 51-54 (1983).
They failed to discharge this burden upon the defendants' motion to dismiss. The court finds that it lacks a basis for exercise of personal jurisdiction over the defendants under either of the sections of the long arm statute relied upon by the plaintiffs, and, consequently, it is unnecessary to determine the existence of minimum contracts sufficient to meet the due process CT Page 4687 considerations of International Shoe Co. v. Washington, 326 U.S. 310,316 (1945); See Rush v. Savchuk, 444 U.S. 320, 327 (1980). Shaffer v. Heitner, 433 U.S. 186, 207-208 (1977).
The court hereby dismisses the plaintiffs' claim for lack of in personam jurisdiction over the defendants and therefore does not reach the claim of forum non conveniens.
BEVERLY J. HODGSON JUDGE OF THE SUPERIOR COURT