[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION MOTION TO DISMISS NO. 108
On August 9, 1993, the plaintiff, Robert J. Margolin, filed a thirteen count complaint against the defendants, Specialty Publishers, Inc.; Career Information Services, Inc.; Peter Jaquith; Sports Media, Inc.; Venture Partners, Ltd. This court is only concerned with those counts (four, five, six and thirteen) that are directed at Sports Media, Inc., the moving defendant. On November 19, 1993, Sports Media filed a motion to dismiss on the ground that this court lacks personal jurisdiction over it. Pursuant to Unisys Corp. v. Department ofLabor, 220 Conn. 689, 695-96, 600 A.2d 1-19 (1991), the court held a hearing on December 12, 1994; January 9, 1995; and January 18, 1995, to allow the parties to present evidence. After the hearing, both Sports Media and Margolin filed briefs.
The testimony at the hearing revealed the following; Margolin had an employment contract (Exhibit B) with Professional Team Publications, Career Information Services and Specialty Publishers. Margolin was the Chief Executive Officer of each corporation. All three corporations shared an office in Westport, Connecticut. Professional Team Publications published yearbooks for sports teams.
In October 1992, Sports Media began negotiations to purchase the assets of Professional Team Publications. During these discussions, Margolin met with Jeffrey S. Butler, president and chief executive officer of Sports Media, in New York City. Sports Media publishes yearbooks for sports teams. Sports Media distributes these yearbooks through several distributors and numerous outlets. A number of the yearbooks are shipped directly to Herman's Sporting Goods in New Jersey. Herman's then distributes the yearbooks to its stores, some of which are CT Page 2067 located in Connecticut. Butler testified that Sports Media did not control nor have any say how Herman's distributed its yearbooks.
Butler testified that in November 1992, he and other employees of Sports Media visited the Professional Team Publications office in Westport on two occasions, one day each. Butler testified that the purpose of the visits was to conduct "due diligence," that is, to review whether Professional Team Publications fully and accurately disclosed its assets and liabilities. During the second visit, representatives of Sports Media met employees of Professional Team Publications. Margolin, however, testified that representatives of Sports Media visited the Connecticut offices of Professional Team Publications for a total of 5 different days, 4 in October and 1 in early November and that their visits amounted to much more than just "due diligence". In his testimony Margolin also claimed that Butler and himself had agreed orally to the terms of an employment contract with Sports Media. Although denying that Sports Media ever extended a contract offer to Margolin, Butler concedes that he interviewed Margolin in New York City.
Margolin testified further that his employment with Professional Team Publications ended on November 5, 1992. Margolin stated that pursuant to his oral employment agreement with Sports Media, he worked for Sport Media by developing cash flow accounts, analyzing existing contracts and continuing his contacts with teams, in effect, cooperating with the asset transfer. All of this work by Margolin was done in Connecticut at the offices of Professional Team Publications. Margolin testified that he only cooperated with the asset transfer because Sports Media had offered him employment which he had accepted. On November 20, 1992, Margolin signed two parts of the asset purchase agreement (Exhibit A): the non-compete clause (paragraph nine) and the general release (paragraph eleven). He stated that he never would have signed the noncompete clause of the asset purchase agreement unless he had first entered an oral employment agreement with Sports Media.
The asset purchase agreement provided that Sports Media would purchase Professional Team Publications's assets only. Butler testified that the primary asset was Professional Team Publication's contractual right to publish yearbooks for various sports team. Another asset, which had less importance, was Professional Team Publication's inventory. Subsequently, according to Butler's testimony, Sports Media renegotiated the contracts with the sports teams and did not use much, if any, of the inventory.
Margolin filed this suit as a result of his alleged wrongful "termination" by Sports Media. CT Page 2068
"A motion to dismiss is the appropriate vehicle for challenging the jurisdiction of the court." Zizka v. Water Pollution Control Authority,195 Conn. 682, 687, 490 A.2d 509 (1985), citing Practice Book § 142. "[T]he rules of practice require the defendant to challenge [personal] jurisdiction by a motion to dismiss." Standard Tallow Corp. v. Jowdy,190 Conn. 48, 53, 459 A.2d 503 (1983). "A motion to dismiss is the proper vehicle to assert the court's lack of jurisdiction over the defendant." Simeone v. Federal Press Co., 40 Conn. Sup. 173, 174,485 A.2d 587 (1984, Higgins J.).
"All assertions of state-court jurisdiction must be evaluated to the standards set forth in International Shoe Co. v. Washington, . . . and its progeny. . . . Those standards, as set out in International Shoe,
require that in order to subject a defendant to a judgment in personam,
if he be not present within the territory of the forum, he have certain minimum contacts with such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Citations omitted; emphasis in original; internal quotation marks omitted.). Standard Tallow Corp. v. Jowdy, supra, 190 Conn. 51-52.
The plaintiff has the burden of proving that the court has personal jurisdiction over the defendant. Id., 54. The plaintiff must prove that Connecticut's long arm statute grants the court jurisdiction over the defendant and must also prove that Connecticut's exercise of jurisdiction does not violate constitutional due process. Hill v. W.R.Grace Co., 42 Conn. Sup. 25, 33, 598 A.2d 1107 (1991, Licari, J.)
A. Long Arm Statute (General Statute § 33-411(c))
 (c) Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of an any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed, regardless of how or where the goods were produced, CT Page 2069 manufactured, marketed or sold or whether or not through the medium of independent contractors, or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.
In its posthearing brief, Sports Media argues that it has (a) not made a contract with Margolin in this state and (b) not made a contract elsewhere to be performed in this state. In his posthearing brief, Margolin contends that the employment contract between Sports Media and himself was to be at least partially performed in Connecticut. In fact, Margolin claims the existence of two contracts: (1) the asset purchase agreement in which Sports Media obtained a covenant not to compete from Margolin and which included office equipment and the like located in Connecticut and (2) an oral agreement in which Sports Media promised to employ Margolin which was to be performed, at least partially, in Connecticut.
The court finds that Margolin credibly explained why he was working in Professional Team Publication's office in Westport after November 5, 1992; i.e., he was fulfilling his obligations under an agreement with Sports Media. When Sports Media asked Margolin to cooperate with the asset purchase, Sports Media must have been aware that Margolin was going to work in Connecticut to facilitate that task. Because the oral employment contract was to be at least partially performed in Connecticut, General Statutes § 33-411(c)(1) grants this court jurisdiction over Sports Media.
In addition, the asset purchase agreement makes reference, interalia, to Sports Media purchasing "any and all office equipment, furniture, fixtures, supplies, files related to PTP and located at 21 Charles Street, Westport, Ct." Because the asset purchase contract was to be performed at least partially in Connecticut, General Statutes § 33-411(c)(1) gives this court jurisdiction over Sports Media.
B. Due Process clause of the United States Constitution
Sports Media argues that if Connecticut exercised jurisdiction over it, its Due Process rights would be violated because Sports Media does not have sufficient minimum contacts with Connecticut. Sports Media contends that its two visits to Connecticut to conduct "due diligence" are not minimum contacts.
Margolin argues that Connecticut can constitutionally exercise jurisdiction over Sports Media. He contends that Sports Media had more CT Page 2070 contact with Connecticut than only the visits to perform "due diligence," i.e. the five separate days he claims that representatives of Sports Media were in Connecticut. Margolin urges that when the court examines all of Sports Media's contacts with Connecticut, the court should determine that the constitutional minimum has been met.
"The United States Constitution allows state courts to assert jurisdiction over nonresident defendants only when minimum contacts exist between the defendant and the forum state. The nature of these contacts must be such that requiring the defendant to defend in the forum state does not offend `traditional notions of fair play and substantial justice.' World-Wide Volkswagen Corporation v. Woodson,
[444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)]; InternationalShoe Co. v. Washington, [326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.2d 95
(1945)]; Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339,85 L.Ed. 278, 85 L.Ed.2d 278 (1940)." Frazer v McGowan, 198 Conn. 243, 252,502 A.2d 905 (1986).
"Since World-Wide Volkswagen, the [Supreme] Court has continued to hold that a defendant has `minimum contacts' with the forum state only if the defendant has purposefully availed itself of the advantages of conducting activities in the forum state. See, e.g., Burger King Corp.v. Rudzewicz, 471 U.S. 462, 474-75, 105 S.Ct. 2174, 2183-84,95 L.Ed.2d 528 (1985); Keeton v. Hustler, Inc., 465 U.S. 770, 774104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984)." Ensign-Bickford Co. v. ICIExplosives USA, Inc., 817 F. Sup. 1018, 1029 (D. Conn. 1993) (holding that Canadian corporation's conduct within Connecticut was sufficient to meet requirements for personal jurisdiction under General Statutes § 33-411.)
Finding that a defendant's activities are within Connecticut's long arm statute influences the analysis of Due Process. "Once the existence of a contract is established, the inquiry under § 33-411(c)(1) is effectively incorporated into the constitutional due process analysis, because the reach of § 33-411(c)(1) extends constitutional limits. This court has held that § 33-411(c)(1) `must be read to authorize the assertion of jurisdiction in every instance where a cause of action arises out [of] a contract made or to be performed [in Connecticut] so long as there are sufficient total contacts to meet constitutional requirements.' Electric Regulator Corp v. Sterling Extruder Corp.,280 F. Sup. 550, 556 (D. Conn. 1968). Combustion Engineering, Inc. v. NEIInternational Combustion, Ltd., 798 F. Sup. 100, 104 (D. Conn. 1992).
This court finds that the minimum contracts test is satisfied. The following are some of the minimum contracts with the State of CT Page 2071 Connecticut. The court has found credible Margolin's assertion that Sports Media agreed with Margolin to an oral contract that was to be performed, at least partially, in Connecticut. Sports Media interviewed prospective employees in Connecticut. Sports Media purchased a Connecticut corporation and acquired its inventory according to Connecticut bulk sales law, General Statutes § 42a-6-101 et seq.[1] Sports Media purchased office equipment and other tangible assets located in Connecticut. Sports Media was aware that its products were being distributed in Connecticut. These contacts indicate that exercising jurisdiction over Sports Media would not offend "traditional notions of fair play and substantial justice."
Accordingly, the motion to dismiss is denied.
LAWRENCE L. HAUSER, JUDGE