[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
Issue/Submission
Should the court grant the defendants' motion to dismiss the plaintiffs' complaint on the ground that the court lacks personal jurisdiction over the defendants? The court finds that the defendants' motion to dismiss the action as to "The Pace Group, Inc." should be granted on the ground that the plaintiff has not provided sufficient evidentiary facts for this court to exercise jurisdiction over the defendant pursuant to General Statutes § 33-411 (b). The court also finds that the defendants' motion to dismiss the action as to "North American Pace Associates, Inc." should be denied on the ground that this court has jurisdiction pursuant to General Statutes § 33-411 (b).
Facts
On August 19, 1996, Clark and Philippa Travell (plaintiffs) filed a complaint in six counts against "North American Pace Associates, Inc." (NAPA), "The Pace Group, Inc." (Pace), and Haynes Kelly (Kelly) (collectively referred to as the "defendants").[1] Count one alleges that, as the plaintiffs' business partner, Kelly breached his fiduciary duty to the plaintiffs in violation of Connecticut General Statutes § CT Page 3340 34-58. Count two alleges that Kelly interfered with the plaintiffs' business expectations. Count three alleges negligent misrepresentation on the part of Kelly. Count four alleges that Kelly violated Connecticut General Statutes § 42-110 (CUTPA). Count five alleges that both NAPA and Pace committed fraud on the plaintiffs in connection with the sale of the franchise. Count six alleges that both NAPA and Pace violated Connecticut General Statutes § 42-110 (CUTPA) by their actions in the sale of the plaintiffs' partnership share to Kelly.
The plaintiffs' complaint alleges the following facts. On June 1, 1987, the plaintiffs entered into a partnership with Kelly to form Improved Reading Centers of Connecticut (IRC) for the continuation, management, and development of a franchise business then owned and operated by the plaintiffs in Old Lyme, County of New London, and the State of Connecticut.[2]
In 1989, the plaintiffs notified Kelly that they wished to sell their partnership interest, and thereafter placed their partnership interest with a business broker for sale to a third party. The plaintiffs allege that thereafter Kelly refused to 1) cooperate with the plaintiffs to maximize the resale proceeds of their partnership interest; 2) provide complete and accurate information regarding the assets of the partnership; 3) provide potential worth and revenue relevant to the purchase and sale of their partnership interest; and (4) cooperate with the plaintiffs' attempts to sell the partnership interest to potential buyers.
With particularity the complaint alleges that Kelly "secretly [took] unfair advantage of them for his own benefit and financial interest and intending to profit from control, acquisition, use and sale of the [plaintiffs'] interest and the partnership's franchise interest and the franchisor's rights thereunder" 1) by engaging in communications and negotiations with persons and business entities to obtain and/or deal by purchase and/or resale of the plaintiffs' partnership share and franchise interest; 2) by failing to disclose to the plaintiffs his negotiations for the resale and/or use of assets of, and/or the plaintiffs interest in the partnership; 3) by failing to disclose to the plaintiffs his current or prospective control, employment by, and/or ownership interests in, among other things, the franchisor rights of the plaintiffs' franchise; 4) by discouraging and misinforming potential buyers of the value of the business thereby impairing the resale potential of the plaintiffs' partnership interest; 5) CT Page 3341 by withholding vital information regarding resale prospects of the plaintiffs' partnership interest; and 6) by misrepresenting, with knowledge of the true value or prospective value thereof, the value of the plaintiffs' interest in the partnership.
The complaint alleges that on July 19, 1991, Kelly, acting in his individual capacity, as well as an agent, servant and/or employee of NAPA, and as a corporate officer of Pace, induced the plaintiffs to sell to him their right, title, and interest in IRC at less than a fair market value solely on the basis of the false representations made by Kelly to the plaintiffs.
On September 27, 1996, the defendants filed a motion to dismiss the plaintiffs' complaint as to NAPA and Pace asserting that Connecticut lacks personal jurisdiction over the defendants. The defendants' motion was accompanied by a memorandum of law and supporting affidavits. On October 16, 1996, the plaintiffs filed objections to the defendants' motion to dismiss together with a supporting affidavit and exhibits. On November 14, 1996, the court held an evidentiary hearing on the defendants' motion.
Discussion
"A motion to dismiss . . . properly attacks the jurisdiction of the court . . . ." Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "The motion to dismiss shall be used to assert . . . lack of jurisdiction over the person, . . . insufficiency of process, and . . . insufficiency of service of process." Knipple v. Viking Communications, 236 Conn. 602, 604
n. 3, 674 A.2d 426 (1996), quoting Practice Book § 143. "The court must consider the allegations of the complaint in their most favorable light." (Internal quotation marks omitted.)Reynolds v. Soffer, 183 Conn. 67, 68, 438 A.2d 1163 (1981). However, "[w]hen a motion to dismiss for lack of personal jurisdiction raises a factual question which is not determinable from the face of the record, the burden of proof is on the plaintiff to present evidence which will establish jurisdiction."Standard Tallow Corporation v. Jowdy, 190 Conn. 48, 53,459 A.2d 503 (1983).[3]
The defendants assert that Connecticut lacks personal jurisdiction over them because, contrary to the plaintiffs' assertions, 1) "The Pace Group, Inc." is not a Maryland corporation and therefore could not have done business in Connecticut as a Maryland corporation, 2) NAPA, a Texas CT Page 3342 corporation, has "not done business in Connecticut, and even if it had, the causes of action alleged in the complaint do not arise in any way from any business of NAPA," as required by General Statutes § 33-411 (b), and 3) the plaintiffs have neither alleged specific tortious acts committed by NAPA nor alleged whether any of these acts actually occurred in Connecticut as required by General Statutes § 33-411 (c)(4). The defendants support their assertions with affidavits. The plaintiffs counter the defendants' claims by asserting that Connecticut has jurisdiction over the defendants pursuant to its long-arm statute § 33-411.
I. Jurisdiction as to "The Pace Group, Inc."
In order for this court to have personal jurisdiction over Pace it is necessary to determine whether the applicable state long-arm statute authorizes the state to assert jurisdiction.Knipple v. Viking Communications, supra, 236 Conn. 607. In their complaint, the plaintiffs' characterize Pace as a "Maryland corporation formed to participate, and/or participating in, the actions of the remaining defendants owned and controlled and at all times relevant hereto transacted business in the State of Connecticut . . . ." The defendants claim that they do not know of any Maryland corporation entitled "The Pace Group, Inc.," and that, as such, Pace could not have done business in Connecticut, or engaged in tortious conduct, thereby subjecting itself to Connecticut's jurisdiction pursuant to § 33-411.[4]
In its objections to the defendants' motion to dismiss, the plaintiffs have submitted exhibits of correspondence with letterhead reading "The Pace Group, Inc.", with a mailing address of "103 Sill Lane, Suite A, Old Lyme, CT." The plaintiffs assert that "[t]he defendants cannot use letterhead containing Connecticut addresses, transact business and subsequently attempt to avoid the jurisdiction of the court by arguing that articles of incorporation had not actually been filed with the secretary of state." However, at the evidentiary hearing on the defendants' motion, the plaintiffs' counsel conceded that Pace was "not a corporation . . . not anything other than an association of five people, including Mr. Kelly."
General Statutes § 33-411 is Connecticut's long-arm statute as to foreign corporations. Any party subject to the statute must be a corporation. Apparently aware of this dilemma, the plaintiffs argued at the evidentiary hearing that Pace is not CT Page 3343 a corporation in reality but a corporation in fact, and thus subject to § 33-411.
Connecticut recognizes the de facto corporation doctrine[5]
"where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name." Clark-Franklin-KingstonPress, Inc. v. Romano, 12 Conn. App. 121, 125, 529 A.2d 240
(1987). "A de facto corporation is an apparent corporate organization asserted to be a corporation by its members and actually existing as such, but lacking the creative fiat of the State." Clark-Franklin-Kingston Press v. Romano, supra,12 Conn. App. 125, quoting Elliott, Private Corporations (4th Ed.) p. 77, § 72.
The de facto corporation doctrine is used primarily in those situations where 1) a party has done business with the corporation as a corporation, 2) the corporation actually exists for all practical purposes, but because of a failure to comply with some provision of the law, has no legal right to corporate existence as against a direct attack by the state, and 3) where a party attempts to take advantage of the corporation's failure to comply with the requisite state provisions for incorporation by bringing suit against the corporate officers, and or shareholders, in their individual capacities. See Balancing RockCondominium Ass'n v. Pinarer, Superior Court, judicial district of Ansonia/Milford at Milford, Docket No. 038740 (November 3, 1993, Curran, J.) (holding that the defendant conducted business with the plaintiff as a corporation and is thus estopped from denying the plaintiff's corporate existence); DiFrancesco v. Kennedy, supra,114 Conn. 681 (holding that the plaintiff did not, by reason of the defect in the incorporating procedure, acquire any rights against the stockholders and members of the corporation).
In this case, it appears from company letterhead that Pace was transacting business in a corporate name, however the plaintiffs have provided no evidence that Pace has in fact attempted to organize as a corporation either in Connecticut or in any other state. Thus, without making a determination of the applicability of the de facto corporation doctrine to § 33-411, the court finds that the plaintiffs have not provided sufficient evidence to demonstrate that Pace is a de facto corporation.
Thus, Connecticut General Statutes § 33-411 is CT Page 3344 inapplicable to Pace on the ground that Pace is not a foreign corporation for purposes of the statute.[6] The motion to dismiss must be granted as to Pace.
B. Jurisdiction as to NAPA
The defendants' motion to dismiss asserts that Connecticut has no personal jurisdiction over NAPA because it has not transacted business in Connecticut, and, assuming, arguendo, that it had transacted business in Connecticut, that the plaintiffs' causes of action do not arise out of any business NAPA conceivably might have done in the state. In addition, NAPA asserts that the plaintiffs have failed to allege facts sufficient to show tortious conduct on the part of NAPA which would subject it to the jurisdiction of the Connecticut courts. The plaintiffs apparently assert that NAPA has transacted business in Connecticut, that NAPA has not registered to do business in Connecticut in violation of § 33-396, and is thus subject to jurisdiction pursuant to § 33-411.
"When a defendant files a motion to dismiss challenging the court's jurisdiction, a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the defendant. If the statutory requirements are met, its second obligation is then to decide whether the exercise of jurisdiction over the defendant would violate constitutional principles of due process." (Brackets omitted; Internal quotation marks omitted.)Knipple v. Viking Communications, supra, 236 Conn. 606.
A. Applicability of Connecticut's Long-Arm Statute
General Statutes § 33-411[7] permits the Connecticut courts to exercise jurisdiction over a foreign corporation, regardless of the corporation's consent, in two situations relevant to the facts in this case: 1) where "[t]he foreign corporation is transacting business in the state without a certificate of authority to do so, and the cause of action arises out of such business;"[8] and 2) where "the plaintiff is a Connecticut resident or a person with a usual place of business in the state, and the cause of action arises out of harm attributable to the foreign corporation."[9] Cross, Connecticut Corporation Law Practice, § 13.7, p. 573.
The plaintiffs have not alleged the specific provisions of CT Page 3345 § 33-411 which would enable this court to exercise jurisdiction over NAPA. Consequently, this court will address only those grounds that are feasibly raised by the plaintiffs' evidence.
1. Jurisdiction under § 33-411 (b)
The plaintiffs assert that NAPA is a foreign corporation transacting business in the state of Connecticut, and, at an evidentiary hearing on this motion, assert that NAPA has failed to register with the state as required by § 33-396, thus presumably subjecting NAPA to this court's jurisdiction pursuant to § 33-411 (b). "General Statutes 33-411 (b) makes a foreign corporation amenable to service of process when it has not formally designated the secretary of the state as its agent for service of process but has engaged in business in Connecticut which would subject it to the requirements of obtaining authorization from the secretary of state." Wallenta v. Avis RentA Car System, Inc., 10 Conn. App. 201, 206, 522 A.2d 820 (1987). Section 33-411 (b) provides that "[e]very foreign corporation which transacts business in this state in violation of33-395[10] or 33-396[11] shall be subject to suit in this state upon any cause of action arising out of such business." General Statutes § 33-411 (b). Section 33-411 (b) "confers local jurisdiction over a foreign corporation on two conditions: the transaction of business in this state, and a cause of action arising out of the transaction of such business." Lombard Bros.,Inc. v. General Asset Management Co., 190 Conn. 245, 251,460 A.2d 481 (1983).
a. "Transacting business"
The first issue before the court is whether NAPA has transacted business in Connecticut and whether such business was in violation of § 33-396. "The term `transacting business' has been taken to mean `a single purposeful business transaction.'" Senior v. American Institute For Foreign Studies, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 139183 (February 7, 1996, Karazin, J.). "A foreign corporation transacts business in this state by performing an important combination of functions, including exercising discretion and making business decisions." Xerox v.Axel Johnson Energy Development, Inc., Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 125804 (April 2, 1993, Lewis, J.). CT Page 3346
In support of their contention that NAPA has not transacted business in Connecticut, the defendants have submitted an affidavit of NAPA's president, Anthony J. Wood, stating that 1) "NAPA has not conducted business in Connecticut and has no office in Connecticut, . . . [2)] NAPA has not solicited customers for the Improved Reading Centers advanced reading skills course in Connecticut, . . . [3)] NAPA has not made any advertisements in Connecticut concerning its advanced reading skills course, [and] . . . [4)] NAPA has not sold or presented the advanced reading skills program in Connecticut." This affidavit, submitted in support of the defendants' motion to dismiss, raises factual questions; thus, the burden is upon the plaintiffs to produce evidence meeting both conditions of § 33-411 (b). StandardTallow Corp. v. Jowdy, supra, 190 Conn. 53.
The plaintiffs argue that NAPA is the franchisor of a Connecticut franchise, that NAPA maintaining a regional office at 103 Sill Lane, Old Lyme, County of New London, State of Connecticut, and that Kelly is an agent for NAPA's regional business activities. In support of its argument, the plaintiffs' have produced the following evidence: a) an "Agreement" (Agreement) between "Staff Training Center PTY. Limited" (Staff), an Australian company with its principal place of business in New South Wales, and NAPA, a Texas corporation, giving NAPA the exclusive marketing rights in the United States to Improved Reading Centers, b) a confirmation from Stan Rodgers, President of Staff, to the plaintiffs affirming that NAPA, as assignee of Staff, has full authority to modify a franchise agreement previously entered into by the plaintiffs and Staff.
In addition to the exhibits, the court conducted an evidentiary hearing at which the plaintiff, Philippa Travell, testified that the franchise, which she owned in conjunction with Clark Travell and Haynes Kelly, was "administered" by NAPA, that Kelly was regional director for NAPA, that NAPA conducted business from the Kelly residence at 103 Sill Lane, that NAPA, through its agent Kelly, solicited business on behalf of its franchise in Connecticut, and that NAPA prepared brochures to be used by its franchise in Connecticut.[12]
In Senior v. American Institute For Foreign Study, Superior Court, judicial district of Stamford-Norwalk at Stamford, Docket No. 129183 (February 7, 1996, Karazin, J.), the plaintiff, Richard Senior, filed a two-count complaint against the defendant CT Page 3347 American Institute For Foreign Study (AIFS), alleging actions stemming from a knife attack on the plaintiff by a fellow camp counselor hired by the defendant. Id. AIFS moved to cite in Camp Sunrise as a defendant for apportionment purposes. Id. Camp Sunrise moved to dismiss the proceeding against it asserting that it was a Rhode Island corporation with its principle place of business in Rhode Island. Id. Other than its relationship with the defendant, Camp Sunrise asserted that it was not involved in any other business in Connecticut. Id.
In determining that Camp Sunrise had transacted business in Connecticut sufficient to satisfy the requirements of § 33-411 (b), the court observed that Camp Sunrise "contacted AIFS in Connecticut, engaged in negotiations with AIFS over the telephone in Connecticut, received agreement papers from AIFS, paid AIFS in Connecticut, received the counselors that AIFS had found and transported, and telephoned AIFS in Connecticut for assistance when the stabbing occurred." Id. The court found these contacts sufficient to establish that Camp Sunrise was transacting business in Connecticut in violation of § 33-396. Id.
In Hill v. W. R. Grace Co., 42 Conn. Sup. 25, 598 A.2d 1107
(1991), the plaintiffs, Thomas and Virginia Hill, commenced an action against Holland (an Illinois corporation) and six other defendants for asbestos-related injuries allegedly resulting from work performed in Connecticut by the plaintiff. Holland manufactured and sold a rail welding machine to National Railroad Passenger Corporation (Amtrak), a Pennsylvania corporation, for delivery to New Haven, Connecticut. The plaintiff's alleged injuries resulting from work he performed during the installation. Holland moved to dismiss the complaint against it on the ground that Connecticut did not have personal jurisdiction. The plaintiff filed a memorandum in opposition to the defendant's motion to dismiss, claiming that Connecticut had personal jurisdiction over Holland pursuant to § 33-411 (b).
In finding that Connecticut had jurisdiction pursuant to § 33-411 (b), the court emphasized the following jurisdictional facts: "Holland entered into a contract with Amtrak for the sale of the machine. The contract specified that the machine was to be delivered by Holland to New Haven. By the terms of the aforesaid contract, Holland agreed to provide personnel to supervise and to instruct Amtrak personnel in the installation and start-up and maintenance of the machine. Holland shipped spare, collateral and replacement parts and equipment CT Page 3348 related to the machine to Connecticut. . . ." Hill v. W. R. Grace Co., supra. The court concluded that "in light of the totality of Holland's activities in Connecticut as recited above, Holland `transacted business' in this state for purposes of § 33-411 (b). At least some of the business transacted in this state required Holland to obtain a certificate of authority from the secretary of the state, and Holland's failure to do so constituted a violation of § 33-396." Id.
In this case, the plaintiffs' evidence demonstrates that NAPA has engaged in at least a single, purposeful business transaction in Connecticut, thus bringing it within the courts jurisdiction pursuant to § 33-411 (b). The plaintiffs' evidence shows that NAPA is a foreign corporation whose business involves the sale of franchises;[13] that, in 1989, NAPA purchased the franchise rights of a Connecticut franchise owned by the plaintiffs; that Kelly, a Connecticut resident, signed the agreement between Staff and NAPA as a guarantor in 1989; that, in 1989, defendant Kelly also signed an addendum to the Agreement, as "Chairman" of the Connecticut franchise, permitting a modification of its franchise agreement as to the named franchisor; that the Agreement provided for a payment of ten (10) percent of the "proceeds" from the sale and marketing of franchises in the United States to Staff. The plaintiff testified that Kelly was an agent and principle of NAPA, that he solicited customers in Connecticut on behalf of Pace and NAPA, that brochures were created by individuals who comprised NAPA for use in the sale of IRC/Pace programs, and that Kelly, while an agent of NAPA, negotiated with the plaintiffs to purchase their portion of partnership share in a NAPA franchise.
The Court finds that the plaintiffs have provided sufficient evidence to support a finding that NAPA transacted business in this State at the initiation of this litigation,[14] that at least some of NAPA's activities required the company to register with the secretary of state, and that NAPA has failed to so register with the secretary of state in violation § 33-396.
b. "Arising out of"
Once the court determines that a foreign corporation has transacted business in Connecticut in violation of § 33-396, it must next determine whether the pending action arises out of the kind of business transacted by the foreign corporation. Section 33-411 (b) requires that "[e]very foreign corporation which transacts business in this state in violation of CT Page 3349 section . . . 33-396 shall be subject to suit in this state upon any cause of action arising out of such business." (Emphasis added.) General Statutes § 33-411 (b). "The decisions addressing this aspect of 33-411 (b) have consistently held that the statutory language mandating `any cause of action arising out of the transaction of such business' requires some showing that the present litigation bears some connection with the business conducted by the foreign corporation in this state." (Brackets omitted.) Lombard Bros. v. General Asset Management Co., supra,190 Conn. 252.[15]
The defendants argue that the plaintiffs' causes of action do not arise out of any business that NAPA might have had in the state, but instead, arise out of the sale of a partnership interest in a NAPA franchise. The plaintiffs assert that NAPA had an interest in the sale of the partnership interest to Kelly.
In Olson v. Accessory Control Equipment, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. 525839 (April 13, 1995, Corradino, J.), Judge Corradino noted that "[i]n ascertaining the facts necessary to establish jurisdiction the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by defendant's affidavits. . . . However, only well-pled facts of plaintiff's complaint as distinguished from mere conclusory allegations must be accepted as true."[16]
(Internal quotation marks omitted.) Olson v. Accessory Equipment, supra, quoting Ten Mile Industrial Park v. WesternPlains Service, 810 F.2d 1518, 1542 (10th Cir. 1987).
The allegations of NAPA's involvement in the sale of the plaintiffs' franchise interest set forth in the plaintiffs' complaint, standing alone, are sufficient to meet the plaintiffs' burden of proof as to whether the particular action arises out of business conducted by NAPA in Connecticut. The plaintiffs have asserted that NAPA is in the business of selling franchises, that they were part owners of a NAPA franchise, and that Kelly, an agent of NAPA, defrauded them of a portion of the fair-market value of their partnership interest in that franchise. The defendants' affidavit appears to deny only that NAPA conducted business in Connecticut; it does not deny that Kelly is in any way associated with NAPA or that NAPA ever communicated with Kelly about the purchase of the plaintiffs' interest in the franchise. The court does not have to accept as true mere characterization of unarticulated fact set forth in a plaintiff's CT Page 3350 complaint when such facts are properly contested by a defendant. However, if a defendant does not contest facts alleged in a plaintiff's complaint, the court must give the benefit of the doubt to plaintiff.
The plaintiffs' complaint alleges that NAPA acted in concern with Kelly to "withhold information from the Travells and to mislead and defraud the Travells, had knowledge of the false representations and breaches of duty to the Travells, and concurred with and adopted the actions of W. Haynes Kelly." Thus, the plaintiffs have shown that the causes of action bear some connection with the business conducted by NAPA.
B. Constitutional Analysis for Exercising Long-Arm Jurisdiction over NAPA.
Once the court has determined that NAPA falls within the ambit of Connecticut's long-arm jurisdiction, the court must next inquire whether the State's exercise of jurisdiction over a party would violate federal constitutional principles of due process. See Knipple v. Viking Communications, supra, 236 Conn. 607. "The federal due process clause permits state courts to exercise in personam jurisdiction over a nonresident corporate defendant that has certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." (Brackets omitted; internal quotation marks omitted.) Thomason v. Chemical Bank, supra,234 Conn. 287, quoting International Shoe Co. v. Washington,326 U.S. 310, 316, 66 S.Ct. 154 (1945). "[T]he twin touchstones of due process analysis under the minimum contacts doctrine are foreseeability and fairness." United States Trust Co. v. Bohart,197 Conn. 34, 41, 495 A.2d 1034 (1985). The foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there. UnitedStates Trust Co. v. Bohart, supra, 197 Conn. 41, quoting WorldWide Volkswagen Corp. v. Woodson, 44 U.S. 286, 287, 100 S.Ct. 559.
In Hill v. W. R. Grace Co., supra, the court found that contacts sufficient to meet the requirements of § 33-411 (b) were also sufficient to meet federal constitutional due process requirements. In Hill, the defendant's knowledge that the contract was to be performed in Connecticut, the defendant's physical presence in the state for seven months, the defendant's employment of workers and the payment of unemployment insurance CT Page 3351 in Connecticut, and the fact that the alleged injury to the plaintiff was caused by a machine manufactured by the defendant, lead the court to conclude that "it was reasonable for Holland to anticipate that it might be subject to the jurisdiction of the courts in Connecticut." Id. The court concluded that the defendant "purposefully avail[ed] itself of the privileges of conducting activities within [Connecticut] . . . and for this reason and the other reasons discussed above, [the defendant] cannot now claim that it is unfair for it to be forced to be required to litigate in Connecticut." (Citations omitted.) Hillv. W.R. Grace Co., supra, 42 Conn. Sup. 34.
In Senior v. American Institute for Foreign Study, supra, the court found that contacts sufficient to meet the requirements of § 33-411 (b) where also sufficient to meet federal constitutional due process requirements. In Senior, the court found that Camp Sunrise "received information from the Greenwich [Connecticut] office . . . received the agreement with a Greenwich address displayed prominently, and sent payment to Connecticut. These contacts were sufficient in that Camp Sunrise knew it was working with a Connecticut company, and could be expected to be hailed into court on a cause of action involving a company that provided it with camp counselors at the situs of that company." (Bracketed material not in original.) Senior v.American Institute For Foreign Study, supra.
In this case, NAPA is the franchisor of a franchise operating in Connecticut; NAPA, or agents of NAPA, created brochures for use by its franchise in Connecticut for distribution to potential customers located in Connecticut; the plaintiff used these brochures to solicit business in Connecticut ultimately on behalf of NAPA; Kelly, as an agent of NAPA, solicited customers in Connecticut on behalf of NAPA; and Kelly conducted NAPA's eastern seaboard operations from his office at 103 Sill Lane, Old Lyme, Connecticut. The court finds that NAPA's contacts with Connecticut are such that it could reasonably anticipate being hailed into court in this state.
Since the court has found that Connecticut has jurisdiction over NAPA pursuant to § 33-411 (b), the court need not address the other avenues for jurisdiction raised by the plaintiff.
Conclusion
CT Page 3352
The defendants' motion to dismiss is granted as to Pace on the ground that the plaintiffs have failed to establish facts sufficient for this court to exercise jurisdiction over the party. The defendants' motion to dismiss as to NAPA is denied on the ground that Connecticut has jurisdiction over the defendant pursuant to § 33-411 (b) and that NAPA has sufficient "minimum contacts" with Connecticut to meet the federal due process requirements for long-arm jurisdiction over a foreign defendant.
D. Michael Hurley Judge Trial Referee