NATALE DIFRANCESCO, TRUSTEE, *vs.* WILLIAM J. KENNEDY ET ALS.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 5th—decided April 26th, 1932.

*Charles S. Hamilton* and *Benjamin F. Goldman,* for the appellant (plaintiff).

*Edward L. Reynolds,* for the appellees (defendants).

HAINES, J. In December, 1926, Henry P. Bucholtz as agent for William J. Kennedy, Henry G. Konold, William J. Konold and himself, began negotiations for the purchase by these parties of the Commercial Building so-called, at George and Commerce Street in New Haven, owned by Natale DiFrancesco, Incorporated.

DiFrancesco himself was the owner of all the shares of capital stock in the corporation save a few qualifying shares held by members of his family. The sale was arranged for $463,000, and the four associated defendants mutually agreed and the plaintiff understood that the title to the property would be taken in the name of William J. Kennedy, to be thereafter transferred by him to a corporation to be formed by the four associates, with a capital of $250,000 all paid in, and in which all were to be stockholders. On February 26th, 1927, all parties met at the office of an attorney, and DiFrancesco as president of the corporate owner, inquired what the position of the two Konolds was in the transaction, saying he relied very largely upon their financial responsibility, and was informed by the associates that after the property was transferred by the owner to Kennedy, the latter was to transfer it to the Holding Company in which the Konolds were to be stockholders, and that that corporation would assume all the mortgages which were to be assumed and made by Kennedy. The property was transferred to Kennedy the same day and $18,000 was paid in cash, and three mortgages assumed by Kennedy, one for $250,000 and accumulated interest to The Connecticut Mortgage & Title Guaranty Company, Trustee; one for $49,000 and accumulated interest to Simon Persky, Trustee, and one for $22,769 and accumulated interest to The William P. Kirk Company and others. Thereupon Kennedy executed and delivered to the plaintiff, two hundred and seventeen promissory notes, dated February 26th, 1927, for $500 each, payable to bearer and maturing at various dates six months apart over a period of eight years, and secured them by a mortgage for $108,500 upon the Commercial Building. In taking the notes and mortgage, the trustee was acting for Natale DiFrancesco, Incorporated, and its cred-

itors and stockholders. This mortgage contained a provision reading, "The right to enforce this mortgage in all its provisions is vested exclusively in the trustee, and no owner or holder or owners or holders of any of said notes shall have a right to institute any suit or proceedings therefor."

The $18,000 cash which was paid at the time of the purchase, was furnished by Henry G. Konold, and immediately after acquiring title, Kennedy gave an additional mortgage on the property to Henry G. Konold for $22,000 of which $18,000 was to cover that cash and the balance was in lieu of another mortgage theretofore held by Konold on other property of Kennedy's. Kennedy then gave another mortgage to Julius Hansen for $6000 in lieu of a mortgage which Hansen held on other property of Kennedy's.

On February 25th—one day before the deed to Kennedy—the certificate of incorporation of The William J. Kennedy Holding Company was filed with the secretary of the state and approved, it being stated therein that the capital with which the corporation would commence business was $250,000 divided into two thousand five hundred shares of $100 each, and that all had been subscribed as follows: Henry G. Konold—1259 shares, William J. Kennedy—1180 shares, Henry P. Bucholtz—60 shares, and William J. Konold—1 share. The first meeting of the stockholders was held the same day, by-laws were adopted and directors elected, and the officers were then elected by the directors. The books of the corporation showed $18,000 of the capital stock paid in in cash and $232,000 in "promotion services and expenses." The certificate of organization was not filed, however, until June 29th, 1931, which was more than two years after the corporation was organized.

After February 25th, 1927, the organization was

conducted as a corporation, keeping its books, calling and holding its stockholders' and directors' meetings, paying taxes, filing its annual reports and income tax reports, issuing its checks and paying its bills as a corporation. In 1931 the General Assembly passed a special act extending the time for filing the certificate of organization of The William J. Kennedy Holding Company to July 1st, 1931, and on June 29th, 1931, while the trial of this action was in progress, the certificate was filed with and approved by the secretary of the state. No action has ever been taken by the State to terminate the existence of the corporation.

After acquiring title and placing the mortgages referred to, Kennedy, on the same day he received title and as a part of the transaction, transferred the property by warranty deed to the Holding Company, describing it as a corporation, and by the terms of that deed the Holding Company assumed and agreed to pay the mortgages then upon the property. It went into possession at once, and the plaintiff has at all times since recognized it as a corporation. He has received from it payments upon the mortgage debts and interest thereon and he later instituted foreclosure proceedings against it as a corporation and so described it in acquiring title to the property by foreclosure. The plaintiff received $12,000 upon the principal together with interest to the time of default, at which time there was due $96,500 and interest from August 26th, 1928.

In the foreclosure action, the plaintiff named as defendants, William J. Kennedy, The William J. Kennedy Holding Company, Henry G. Konold and Julius Hansen, but the only allegations regarding the last two were, that they were interested as holders of subsequent mortgages. No damages were claimed in that action and no claim was made for a deficiency judg-

ment. Judgment in foreclosure was given April 12th, 1929, by stipulation, and on April 25th, 1929, upon the passing of the law day, the plaintiff obtained title to the property. While this foreclosure action was pending, The Connecticut Mortgage & Title Guaranty Company began a foreclosure of its mortgage, and on January 7th, 1930, obtained the title.

The trial court found that on April 25th, 1929, the amount due the plaintiff was $100,360 and against this was credited the net value of the property and a certain amount collected by a receiver of rents, amounting to $60,501.94, leaving a balance of $39,858.06, and after adding interest to that date, judgment was given for $45,537.98.

The present appeal assigns as error, the following rulings of the trial court: (1) That The William J. Kennedy Holding Company was a corporation and the individual members thereof not liable in this action, (2) that the legislative special act could affect the action, then pending, and (3) that the plaintiff was estopped from denying the corporate existence of The William J. Kennedy Holding Company.

It is to be noted that the very first claim made in the brief of the plaintiff is, that the judgment in his favor against The William J. Kennedy Holding Company should be sustained. This is equivalent to asking us to hold that this was a corporation in taking title to the property, that as a corporation it assumed and agreed to pay this mortgage debt to the plaintiff, that it could be sued as a corporation by the plaintiff, and that judgment against it as a corporation should be given to the plaintiff; but nevertheless the claim is made that it was not a corporation, and when it endeavored to act as such the acts were void, rendering those who were associated therein personally liable to the plaintiff, and that the plaintiff should also have

judgment against them personally. This proposition merits no further attention than to point out that if the assumption of the debt was a valid corporate act, the members of the organization were not liable, and on the other hand, if these members *are* liable it is because the assumption of the debt was a void corporate act.

The burden of the plaintiff's brief is that the Holding Company, at the time the debt was assumed, was not a corporation, de facto or de jure; that the $232,000 claimed to have been paid in for capital as "promotion services and expenses" was a "sham," and that the rights of the plaintiff had accrued before the legislative act was passed and before the certificate of organization was filed, and so the plaintiff could not be affected thereby. It may or may not be true that the capital was not properly paid in, but if the plaintiff has a remedy for the failure to comply with legal requirements in this regard, this is not the time or the form of action in which to enforce it.

The William J. Kennedy Holding Company began its corporate existence the day its certificate of incorporation was approved by the secretary of the state. General Statutes, § 3398. That it then became at least a de facto corporation, does not admit of doubt. "The corporation is a de facto corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name." Cook, Corporations (8th Ed.) p. 773, § 234. "A de facto corporation is an apparent corporate organization asserted to be a corporation by its members and actually existing as such, but lacking the creative fiat of the State." Elliott, Private Corporations (4th Ed.) p. 77, § 72; 1 Thompson, Corporations (3d Ed.) § 266 and cases. "A de facto corporation . . . is an asso-

ciation which actually exists for all practical purposes as a corporate body, but which, because of failure to comply with some provision of the law, has no legal right to corporate existence as against a direct attack by the State." 14 C. J. p. 204, § 215. "A corporation de facto is in plain English a corporation in fact. It can incur obligations as a corporation which do not bind those who associated to constitute it, in their individual capacities." *Lamkin* v. *Baldwin & Lamkin Mfg. Co.*, 72 Conn. 57, 65, 43 Atl. 593; *Mackay* v. *New York, N. H. & H. R. Co.*, 82 Conn. 73, 81, 72 Atl. 583; *New York, B. & E. Ry. Co.* v. *Motil*, 81 Conn. 466, 472, 71 Atl. 563. It is true that § 3404 of the General Statutes contains a provision that where a certificate of organization is not filed within two years after the certificate of incorporation is filed, the latter certificate shall be void. Such failure clearly deprives the organization of the right to become a corporation de jure; nevertheless, as we have seen, it may exist as a corporation de facto, and in the exercise of corporate functions, it may bind itself by contracts and other transactions. "Whether the business contracts of a corporation made after the approval of its certificate of incorporation and before the filing of its certificate of organization are mere nullities? We think not. The statute does not provide that such contracts shall be void, although the legislature must have contemplated the possibility that corporations duly incorporated under the Act might actually engage in business before filing a certificate of organization, and might hold themselves out to the public as having the right to contract with reference to present business transactions. It is reasonable to infer that the legislature intentionally left the consequences of such a premature engagement in business to be determined in accordance with the well-settled rules of law governing the enforcea-

bility of contracts made in excess of the legal powers of corporations." *Chieppo* v. *Chieppo,* 88 Conn. 233, 237, 90 Atl. 940.

It follows that this plaintiff did not, by reason of the defect in the organization procedure, acquire any rights against the stockholders and members of the corporation on the assumption by the latter of the mortgage debt. It becomes unnecessary therefore to inquire further whether, under the particular circumstances of this case, this was a de jure corporation, since the plaintiff could have obtained no greater rights if it had been. It is also unnecessary to consider whether the Act of the legislature had the result of making de jure what was before merely de facto, so far as the plaintiff was concerned, since the latter had no rights to be affected by the Act in any event.

Though this determines the appeal, we may add that the acts of the plaintiff in his dealings with the corporation, done with full knowledge, were in fact such as to clearly estop him from now claiming that the corporation did not have any existence.

There is no error.

In this opinion the other judges concurred.