******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

APPENDIX

## SEMINOLE REALTY, LLC *v.* SERGEY SEKRETAEV*

Superior Court, Judicial District of Windham
File No. CV-10-6002259

Memorandum filed October 24, 2014

*Proceedings*

Memorandum of decision on plaintiff's action to foreclose mortgage on certain of defendant's real property. *Judgment in part for the plaintiff.*

*Sergey Sekretaev*, self-represented, the defendant.

*Gordon P. Videll*, for the plaintiff.

*Opinion*

BOLAND, J. In this action, plaintiff pursues a foreclosure of a first mortgage on residential property. The named defendant, who represents himself, is owner of the equity in the property and the lone defendant in the case. The matter came before the court for trial on September 30, 2014, and was continued to a second day, October 23. In this memorandum, the court will address: the complaint, dated July 14, 2010; the answer (#111), dated August 9, 2010,[1] which includes special defenses and counterclaims; plaintiff's reply to the answer, defenses and counterclaims, dated September 10, 2010 (#115); and two motions to dismiss defendant filed on August 28, 2014 (##222 and 223).

As may be obvious from the "CV 10" docket number, this case has been pending for some time and has seen a number of issues raised along the way. While the two recent motions to dismiss challenged the court's subject matter jurisdiction and thus required a response, each depended for resolution upon factual issues requiring an evidentiary hearing. Since at the time of their filing trial had already been scheduled to commence on September 30, the court indicated that the parties could produce their evidence on those jurisdictional matters in the course of trial and the motions would be taken under advisement until now.

## I

### PLAINTIFF'S CASE-IN-CHIEF

Having heard the parties and examined their exhibits, the court makes the following findings:

a. On April 24, 2009, plaintiff conveyed to defendant by warranty deed title to a condominium unit in the town of Sterling, known as Unit No. 4 of River Bend Condominiums, for a total price of $140,995 (Ex. I);

b. On that same date, to finance the purchase, defendant paid $4000 in cash, and executed a promissory note ("the note") to plaintiff for the amount of $136,995, with interest only (annual rate: 7.5 percent) payable monthly, and the entire principal plus any accrued but unpaid interest due and payable in full on April 24, 2010 (Ex. 2);

c. On that same date, as security for the note, he issued to plaintiff a mortgage encumbering the condominium unit described in "a"; the mortgage was recorded on April 27, 2009, at volume 127, pages 482-492 of the Sterling Land Records (Ex. 1);

d. Plaintiff remains the holder of both the note and the mortgage, and has standing to bring this action;

e. Defendant made only eight of the monthly interest payments, and has made no payment towards the principal;

f. Plaintiff declared the defendant to be in default of the provisions of the note and mortgage on April 10, 2010 (Ex. 5);

g. On the note, plaintiff is owed the following as of September 30, 2014:

| | |
|---|---|
| Principal: | $136,995.00 |
| Interest: (per affidavit of Sept. 30) | $47,263.85 |
| Interest: Oct. 1—24, per diem of $28.15: | $675.60 |
| Total: | $184,934.45 |

(postjudgment, per diem interest accrues at $28.15);

h. The value of the condominium unit which is encumbered by the mortgage is $75,000 as of October 23, 2014; and

i. Plaintiff has satisfied the requirements of the Emergency Mortgage Assistance Program and the Federal Loss Mitigation Program.

It is relevant to point out that at the time of the 2009 title transfer and mortgage issuance, defendant had independent, competent counsel. "In a mortgage foreclosure action, [t]o make out its prima facie case, [the foreclosing party] ha[s] to prove by a preponderance of the evidence that it [is] the owner [or holder] of the note and mortgage and that [the mortgagor] ha[s] defaulted on the note." (Internal quotation marks omitted.) *Franklin Credit Management Corp.* v. *Nicholas*, 73 Conn. App. 830, 838, 812 A.2d 51 (2002), cert. denied, 262 Conn. 937, 815 A.2d 136 (2003). Given the findings, the court concludes that plaintiff is entitled to a judgment of foreclosure unless the defendant raises a sufficient barrier to that result in his answer or special defenses.

## II

## ANSWER

The defendant denies all seven paragraphs of the plaintiff's complaint. As to paragraphs 2, 3, and 4, he adds that he "can neither admit nor deny" the allegations thereof. Throughout the trial, therefore, the court viewed the plaintiff's task as to prove that the allegations of its complaint are true by a preponderance of the evidence, without reliance upon any admissions by defendant.

## III

## SPECIAL DEFENSES

The special defenses here number twelve. Plaintiff has denied all these defenses,[2] but never sought to winnow this list by a motion to strike or other means. The degree to which a defendant in a foreclosure action may pursue multiple special defenses is an unsettled question; *Peoples United Bank* v. *E2A, LLC*, Superior Court, judicial district of New London, Docket No. CV-

13-6016368 (December 12, 2013) (*Cosgrove, J.*). Because this defendant is a self-represented person, the court would be acting consistently with authority if it allowed him some latitude in presenting his proof of these allegations. More importantly, though, is that here the relationship of the parties is not exclusively that of lender and borrower. Plaintiff built and marketed the condominium sold to defendant, and took back the one-year note as an accommodation to him but also so as to enable it to proclaim the property as "sold" even before defendant qualified for third-party financing. Additionally, plaintiff managed the condominium development under the trade name "Riverbend Condominium Association." Defendant's dissatisfaction with plaintiff's work as builder and performance as manager played a role in his performance as a borrower and goes beyond the four corners of the lending documents.

"The question to decide is whether the subject of the defendant's counterclaim is sufficiently intertwined with the complaint that it arises from the same transaction." *CitiMortgage, Inc.* v. *Rey*, 150 Conn. App. 595, 608, 92 A.3d 278, cert. denied, 314 Conn. 905, 99 A.3d 635 (2014). Because "a mortgage foreclosure action is an equitable proceeding, the trial court may consider all relevant circumstances to ensure that complete justice is done. . . . The determination of what equity requires in a particular case, the balancing of the equities, is a matter for the discretion of the trial court. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles." (Internal quotation marks omitted.) *TD Bank, N.A.* v. *M.J. Holdings, LLC*, 143 Conn. App. 322, 326, 71 A.3d 541 (2013). The court has these principles in mind in concluding that the allegations of the complaint, the special defenses and the three counterclaims all involve the same transaction and the same parties. Therefore, the court will not now peremptorily constrain defendant in pursuing his issues.

### First Special Defense

Defendant first claims that plaintiff failed to send him notice of a default as required by ¶ 17 of the mortgage, and that such a notice is a condition precedent to acceleration of his debt. Exhibit 5 is a copy of a demand letter from plaintiff's counsel to defendant dated April 10, 2010, mailed to him via United States mail addressed to the post office box which defendant admitted was his. Attorney Gordon P. Videll, who sent the letter, testified that it was not returned to him. The defendant denied receipt of the letter. There can be no argument that the fact of default was known to defendant, since he had directed his own letter to plaintiff on March 28, 2010, stating, "I decided to put the payments on hold until all repair will be done"; (Ex. D). Other exhibits make clear that from February on of that year the parties were in intense negotiation over the problems at

the condo. Videll's testimony that the letter was mailed entitles plaintiff to the presumption that the letter was also received; *Garland* v. *Gaines*, 73 Conn. 662, 49 A. 19 (1901). Defendant's denial is insufficient to rebut that presumption. Under the circumstances, the court finds that this special defense is without merit.

Defendant at trial raised a separate claim regarding this default notice, namely, that plaintiff failed to produce a copy of the notice in response to a production request filed by defendant in January of 2011. He submitted, as Exhibit L, a copy of the request with plaintiff's March 15, 2011 answer attached. He is correct that plaintiff's reply, "All required documents have been delivered previously as part of the complaint," is a misstatement as it relates to this item, which is not a part of the material delivered with the complaint; see August 4, 2010 Return of Service, as of record appears. Plaintiff's counsel characterized the misstatement as an oversight rather than an intentionally deceptive act. Defendant demands a sanction, up to and including dismissal of the foreclosure action. Given that defendant had a copy of this very notice obtained by some other means, that sanction would be grossly disproportionate to any harm done to him by the discovery inaccuracy. The court will, however, consider whether other sanctions are warranted in response to this circumstance.

### Second Special Defense

The Second Special Defense lists a broad array of charges that plaintiff has failed to service and administer the loan in compliance with federal, state, and local laws. Key to its applicability is that plaintiff is "a Banking Corporation" subject to such laws and regulations. Plaintiff is not a banking corporation, but a limited liability company primarily involved in building and selling homes. It became a lender in this case under unusual circumstances. Furthermore, defendant's evidence did not establish that as a lender plaintiff violated any pertinent standard. The court therefore finds that this special defense is without merit.

### Third Special Defense

The Third Special Defense claims that plaintiff failed to comply with a requirement imposed upon lenders by the National Housing Act, 12 U.S.C. § 1701x, that each provide an eligible borrower with a preforeclosure notice outlining what counseling options exist to avoid loss of the home. Defendant has not attempted to prove that he is an eligible borrower, defined in the Code as a person rendered unable to pay by a decline in income. Defendant offered income evidence only in response to this court's questions as to the cost of repairing damages addressed by his second counterclaim, and that evidence was sketchy, unsupported by any documentation or other corroborating information, and not

probative in any respect that would have led to a different outcome here. Defendant has insisted throughout that his decision to not pay even the interest on the loan as far back as 2010 was made strategically in response to what he regarded as plaintiff's nonperformance of its contractual obligations to him. His income, or lack thereof, is immaterial to the equities of this case; if plaintiff had provided the notice, assuming that it was required, the court finds that would have made no difference to the parties' positions. The court therefore finds that this special defense is without merit.

### Fourth Special Defense

This defense is a composite of parts of the above, alleging that plaintiff failed to service the loan properly and failed to afford him access to debt management and relief options. He offered no proof concerning this defense at all. It is found to be without merit.

### Fifth Special Defense

This defense alleges that plaintiff breached the purchase and sale agreement by failing to underwrite the first year's condominium association fees. The court finds that the allegation is true and that plaintiff owes defendant $1680. However, that amount will be considered as an offset to plaintiff's debt, as discussed below. Equity does not warrant allowing payment of a debt of approximately $185,000 to be avoided because of an unpaid bill amounting to less than 1 percent thereof.

### Sixth Special Defense

This defense alleges comparative negligence. Comparative negligence has no place in an action to foreclose a mortgage. This special defense is found to be without merit.

### Seventh Special Defense

This defense alleges that plaintiff failed to maintain its limited liability status with the Office of the Secretary of the State. He deems this "questionable." By implication, he is raising the company's failure to comply with business update requirements as a full defense to plaintiff's foreclosure as a whole. Exhibit 7 is uncontroverted evidence that plaintiff is today a business recognized by the Secretary of the State. Although with respect to a corporation rather than a limited liability company, the futility of this issue as a defense was established long ago in the case of *DiFrancesco* v. *Kennedy*, 114 Conn. 681, 687–88, 160 A. 72 (1932): [a] corporation is a de facto corporation where there is a law authorizing such a corporation and where the company has made an effort to organize under the law and is transacting business in a corporate name. . . . A de facto corporation is an apparent corporate organization asserted to be a corporation by its members and actually existing as such, but lacking the creative fiat of the State. . . . [B]ecause of failure to comply with some provision of

the law, [it] has no legal right to corporate existence as against a direct attack by the State . . . [but it] is in plain English a corporation in fact." (Citations omitted; internal quotation marks omitted.) Accord *Clark-Franklin-Kingston Press, Inc.* v. *Romano*, 12 Conn. App. 121, 529 A.2d 240, cert. denied, 205 Conn. 803, 531 A.2d 935 (1987). This special defense has no merit.

### Eighth Special Defense

This defense claims plaintiff acted with unclean hands.

In *Thompson* v. *Orcutt*, 257 Conn. 301, 777 A.2d 670 (2001), it was held that since an action to foreclose a mortgage is an equitable proceeding, a party seeking its benefit must establish that he comes into court with clean hands. "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue." (Internal quotation marks omitted.) Id., 310. While that language may seem to place upon plaintiff the burden of proving its faultlessness as an element of standing to sue, the Court immediately went on to indicate that "[u]nless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." (Internal quotation marks omitted.) Id. Shortly after *Thompson*, the Appellate Court clarified that the burden of proving unclean hands rests upon the party asserting the defense, when it held, in *Ridgefield* v. *Eppoliti Realty Co.*, 71 Conn. App. 321, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002), that "[t]he party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation." (Internal quotation marks omitted.) Id., 335.

As indicators of "unclean hands," defendant returns to the improper servicing procedures raised in the Second and Fourth Defenses, as discussed above. Recharacterizing those claims as evidence of "unclean hands" is not sufficient to sustain defendant's burden of pleading, let alone proof. In the circumstances present, the court finds this special defense to be without merit.

### Ninth Special Defense

This defense is failure of good faith and fair dealing. The substance of this nebulous charge is that plaintiff denied defendant "access to the residential mortgage servicing protocols applicable to the subject note and mortgage." No further factual or legal basis is supplied. As expressed, this defense reads as a restatement of the substance of the Second and Fourth Defenses, and is likewise found to be without merit.

### Tenth Special Defense

This speaks to the parties' disputes as to the physical condition of the condominium. While the alleged breaches of warranty by plaintiff with respect to the condition of the premises may be material, they do not constitute a special defense to the foreclosure. Instead, they are appropriately the subject of a counterclaim. The issues regarding the condominium's quality or lack thereof will be discussed below as an aspect of the second count of the counterclaim.

### Eleventh Special Defense

Again, this treats of problems defendant had with refinancing the one year note as a result of construction mistakes, and the same observation made as to the Tenth Special Defense applies.

### Twelfth Special Defense

Here, defendant raises the issue of the value of the condominium at the time he purchased it.[3] This is not a special defense to a foreclosure. The court notes that the appraisal of present value provided by plaintiff's expert matches defendant's claim in court on September 30 that the condominium unit is today worth $75,000, as the court has found, above.

## IV

## COUNTERCLAIMS

Defendant has filed three counterclaims here, briefly summarized thus:

1. The first count of the counterclaim seeks to have plaintiff's mortgage and note declared null and void on the basis that they resulted from deceptive and fraudulent practices in both their origination and as serviced by the plaintiff.

2. The second count of the counterclaim alleges failure by plaintiff to comply with the New Home Warranty Act and the parties' Purchase Agreement.

3. The third count of the counterclaim alleges failure of plaintiff to comply with the acceleration clause of Paragraph 17 of the mortgage.

Plaintiff denies all three.[4] The court will first address the third of these counts. It is a restatement of the same issues defendant raised in the form of the first special defense. On the merits, the court has determined that issue as set forth above. Defendant produced no additional evidence on this score in his case-in-chief, and the court thus finds that the allegations of the third count of the counterclaim have been adequately addressed in the treatment of the special defense.

The first count alleges two distinct violations of federal statutes. First, he claims the benefit of 15 U.S.C. § 1635, which permits rescission of the loan transaction within three days by a debtor. Section 1635 is inapplicable to this case. Section 1602 of title 15 of the United

States Code contains the definitions and rules of construction which must be read in concert with § 1635 to interpret how this entire paragraph is to be applied, and in subsection w—now codified as subsection "x,"[5] it defines " 'residential mortgage transaction' [as] a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." Section 1635 (e) provides that it "does not apply to . . . a residential mortgage transaction as defined in section 1602 (w) of this title." That is the type of transaction involved here, and thus no three-day right of rescission was imposed upon the deal.

Next, he claims that 15 U.S.C. § 1639 forbids the extension of credit to a debtor unless the creditor has made an adequate investigation of the borrower's creditworthiness to enter into the original transaction. His invocation of § 1639 is equally inapplicable. This section limits a creditor's privilege to engage a consumer in a "high cost mortgage," defined as one in which "the annual percentage rate at consummation of the transaction will exceed by more than 6.5 percentage points . . . the average prime offer rate for a comparable transaction." The limit permitted, therefore, would have to be lower than the interest rate agreed upon by the parties here, that is, 7.5 percent. Defendant bears the burden of showing that plaintiff violated this statute. He offered no evidence to that effect. Furthermore, the prime interest rate on April 24, 2009, the court notes, was 1.25 percent,[6] meaning that a loan under 7.75 percent would be outside the scope of § 1639.

The second count is the heart of his case. He contends that the condition of the premises was defective, and that plaintiff, in its role as builder, and equally in its role as condominium manager, refused to make required repairs. His frustration with plaintiff's inertia (at best) or deceptions (at worst) led to his deciding, even before the due date of the one year note, to refuse (on the advice of counsel, he claims) to make any payments to plaintiff or to refinance that obligation as the parties had agreed upon. He has made no payment since the beginning of 2010, but has maintained title to and occupancy of the condominium throughout the four-plus years that this suit has been pending. Throughout that time, he has vigorously defended this lawsuit.

The court allowed him several hours to enumerate the building's defects and the impact they had on the value of the premises with the intent of allowing him to prove damages, if any, that would, at the very least, provide him an offset to the debt plaintiff claims. If these damages were of sufficient dimension, perhaps that would lead the court to conclude that plaintiff's demand for foreclosure is inequitable. Defendant used

much of this time to argue his entitlement to the multiple legal defenses he believes he enjoys under federal law, as addressed above, and to express in very nebulous terms the toxic impact plaintiff's breaches have had upon his family, his career, and his faith in the promise of America. Defendant maintains that his losses in those categories are inestimable, and conceded that he has no evidence of any damages affecting those concerns which can be translated into dollar amounts.

With much prodding from this court, he focused in upon two specific defects. One involved a crack in a basement wall which led to water accumulating in that area shortly after he took occupancy. There was no evidence of the weather conditions at the time this occurred. Plaintiff met his complaints with indifference. Eventually, defendant mopped up the water, purchased concrete and other supplies, and repaired the crack. Thereafter, although exactly when is unclear, plaintiff sent in a contractor who replaced some damaged sheetrock. Defendant has not experienced any subsequent water problems in the ensuing four years. He had no evidence of any out-of pocket expenditures he incurred in making this repair. The court finds on the basis of his testimony that plaintiff failed in its obligation as the builder of this new residential unit to make a necessary repair when notified by its buyer to do so, and that defendant's labor in making the repairs has a value of $2000.

His second concern relates to a dead tree which fell on the property in a storm. It did not hit the condominium, or do any damage to person or property. Defendant demanded that the condominium association remove it, which it failed to do. However, he did not relate whether the tree had previously stood on condominium property or that of an abutter before it came down, whether he paid to have it removed, or, indeed, whether it even has been removed. Instead, he claims that the danger inherent in this event has "scared" him to the point of determining that the plaintiff has no equitable right to demand his payment of its mortgage.

As to the flooded basement problem, the court holds that allowing him an offset to plaintiff's debt in the amount of $2000 is an equitable response. Like the condominium association fee default on plaintiff's part noted above, denying plaintiff's request for a foreclosure as a consequence of this breach would be disproportionate to the harm he suffered.

As to defendant's emotional response to the fallen tree—and, moreover, as to the emotional impacts which he claims his long standoff with plaintiff has had upon his career and his family—this court will only observe that while defendant is undoubtedly sincere in his perception of these unfortunate consequences, they lack any objectively discernible connection to the actual

occurrences on the subject premises. His quest to have this court determine that plaintiff must forfeit its foreclosure claim against him on the strength of these occurrences is objectively unreasonable.

### V

### MOTIONS TO DISMISS (##222 AND 223)

Motion to dismiss #222, filed on August 28, claims that plaintiff is not the real party in interest and thus lacks standing. His claim is that the limited liability company is the alter ego of its sole member, Joseph DiBuono. Aside from that allegation, defendant produced no evidence sufficient to allow a court to pierce the corporate veil that segregated DiBuono individually from the business that is the plaintiff here. There is no factual basis for this motion, and it ought to be denied.

Number 223, filed the same date, claims that plaintiff lacked formal status with the office of the Secretary of the State as a result of its late filing of annual paperwork, and hence lacks standing to pursue this foreclosure action. The findings and discussion set forth above under "Seventh Special Defense" need not be repeated; the defendant cites a host of cases involving mortgagee standing to pursue a foreclosure which all arise from very different factual scenarios. This motion, likewise, ought to be denied.

These two motions are, notably, the fifth and sixth motions to dismiss that he has filed in this action. All four prior motions were accompanied by lengthy memoranda of law, met by plaintiff's objections, and denied by this or previous jurists.

### VI

### CONCLUSION AND ORDERS

The court concludes that the plaintiff has proven by a preponderance of the evidence that defendant is liable to it upon the promissory note secured by the mortgage, and that the defendants' special defenses (except number five) are legally inapplicable or factually supported by any material evidence. The first and third counts of his counterclaim are inapplicable. Defendant has proven in part the allegations of the second count thereof, and is entitled to an offset.

It is therefore adjudged, ordered, and decreed:

1. A judgment of strict foreclosure is granted;

2. Plaintiff's debt of $184,934.45 shall be reduced by $2000 consistent with the court's finding on the second counterclaim, and by $1680 consistent with the court's findings on the fifth special defense, to a net amount of $181,254.45;

3. The first Law Day is December 1, 2014, with subsequent dates for any subsequent encumbrancers in inverse order of their priority;

4. Plaintiff is awarded no attorney's fee or costs, in light of its breaches of warranty and contract;[7]

5. The motions to dismiss filed August 28, 2014, are each denied; and

6. Plaintiff shall file an amended answer to the special defenses and counterclaims not later than November 5, 2014 (see footnote 2 of this opinion).

* Affirmed. *Seminole Realty, LLC* v. *Sekretaev*, 162 Conn. App. 167, A.3d     (2015).

[1] For no known reason, and without seeking permission of the court, defendant filed four separate and distinct versions of an answer with special defenses and counterclaim; the first arrived on July 28, 2010 (#106), the second on August 4 (#108), and two on August 9 (##109 and 111). The last, #111, is the operative answer for the purposes of this memorandum.

[2] While there are twelve special defenses pled in the fourth iteration of defendant's answer, plaintiff's September 10, 2010, reply to the special defenses, #115, answered "denied" eleven times. A close perusal of the four versions of defendant's pleading reveal that the July 28 edition (#106) had fifteen special defenses and a single counterclaim; the August 4 version (#108) had eleven special defenses and two counterclaims; the August 9 version, #1(#109), had ten special defenses and two counterclaims, and the August 9 version, #2 (#111), which the court is treating as the operative answer, has twelve special defenses and three counterclaims.

It is evident that the plaintiff replied to the August 4 version and missed the last special defense and the third counterclaim slipped into the August 9 #2 answer. Ordinarily, this would be a serious concern. Here, where defendant has papered the file with multiple, multipaged pleadings with shifting claims and charges, the court regards it as more a matter of form than of substance. The court notes that plaintiff's succinct reply to each of the August 4 special defenses was "denied," and will impute to plaintiff, subject to the record being corrected, a "denial" to the twelfth defense also.

A similar problem attends the answer to the counterclaims. Plaintiff's answer of September 10 was that "1" and "2" are both denied. There were two in the August 4 version, but three in August 9's #2. So, as with the missing reply to special defense number twelve, the court will impute a denial to counterclaim three.

To correct the record, however, plaintiff is directed to file an amended reply to all twelve special defenses not later than November 5. If the replies differ from the version of September 10, 2010, other than with respect to these two corrections, the court will conduct further proceedings as necessary.

[3] Exhibit M is a sheaf of preclosing e-mails containing various indications that defendant, who was conducting negotiations while still in Europe, was concerned about the fair market value of the condominium he was buying. He was advised by his Realtor to commission an appraisal. Whether or not he did so then is unclear.

[4] See footnote 2 of this opinion.

[5] Pub. L. 111-203 recodified § 1602 (w) as § 1602 (x).

[6] Source: www.comptroller.tn.gov/shared/. . ./20130906Interest TableSince2002.

[7] The denial of attorney's fees and costs is also a sufficient sanction for the discovery mistake discussed in response to the First Special Defense.